**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lawrence MONROE,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Troy Lee LOTT, Defendant-Appellant.**

**Nos. 76–1881 and 76–2260.**

United States. Court of Appeals,
Ninth Circuit.

Feb. 22, 1977.

Rehearing and Rehearing En Banc
Denied April 22, 1977.
Certiorari Denied June 13, 1977.
See 97 S.Ct. 2936.

Steven M. Kipperman, Kipperman, Shawn & Keker, San Francisco, Cal., for Monroe.

Eb F. Luckel, Asst. U. S. Atty., San Francisco, Cal., Charles L. Jaffee, Washington, D. C., for plaintiff-appellee.

Patrick W. Coyle, San Francisco, Cal., for Lott.

Before WALLACE and ANDERSON, Circuit Judges, and JAMESON,* District Judge.

## OPINION

WALLACE, Circuit Judge:

Monroe and Lott were convicted of both conspiracy to distribute and to possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. § 846 and distribution of heroin and cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, they raise numerous questions concerning the indictment, the sufficiency of the evidence, the jury instructions and the behavior of the prosecutor. We affirm.

I

Monroe alleges that the schedules of controlled substances established by 21 U.S.C. § 812 were not republished as required by that section and that therefore there was no controlled substances list in effect and having the force of law at the time of the offense. Thus, he contends, the indictment should have been dismissed for failure to state an offense against the laws of the United States.

* Honorable William J. Jameson, United States District Judge, District of Montana, sitting by designation.

■ His contention fails for the reasons stated in *United States v. Eddy,* 549 F.2d 108 (9th Cir., May 24, 1976). There we held that the republication requirement of section 812 is satisfied by the annual publication of the updated schedules in the Code of Federal Regulations. That requirement has been fulfilled.[1] Because the schedules were in effect at the time of the offense, the indictment stated an offense. There was no error in refusing to dismiss the indictment.

## II

Both Monroe and Lott contend that there was insufficient evidence to sustain a guilty verdict on the conspiracy count. We disagree.

Viewing the evidence in a light most favorable to the verdict, *United States v. Nelson,* 419 F.2d 1237, 1241–42 (9th Cir. 1969), the record indicates that on June 3, 1975, Lott had a conversation with Mississippi state narcotics agent Mallory during which Lott stated that he could get Mallory "a lot of heroin and cocaine." In that conversation, Lott also stated that he had a brother-in-law, Lawrence Monroe, in Oakland, California, who could obtain any quantity of any drugs. In late July of 1975, Lott contacted his brother-in-law and put him in touch with Mallory. Monroe agreed to sell quantities of heroin and cocaine to Mallory. It was also agreed that Monroe would receive $2000 for his efforts and Lott would receive $1000.

On July 31, Mallory and Lott flew to Oakland. Early in the morning of August 1, they met with Monroe at a hotel. Monroe said that all was ready and that the cocaine would cost $35,000 per kilo and the heroin between $10,000 and $15,000 per pound. Later in the morning, Lott called Mallory and indicated that the source was at the hotel and that Lott, Monroe and the source would be waiting in the coffee shop. Mallory responded that he and his cousin Paul, actually agent Wallace of the Drug Enforcement Agency, would meet them there.

Mallory and Wallace went downstairs to the coffee shop and saw Lott and Monroe. Seated with them were Eddie Johnson and Jean Willis. Monroe introduced Mallory and Wallace to Johnson and Willis and the entire group discussed the transaction. After viewing the money to be used in the purchase, Willis announced that she would contact her source. She then left with Johnson.

Willis and Johnson did not reappear for several hours. Mallory said that he was going to leave, but Lott asked him to stay, saying that there was a lot at stake. Monroe stated that he did not think "they" were coming and that there would be no sale. However, Monroe stated that if the deal did not work out, he could get drugs from another source. Monroe and Lott then left.

After Monroe and Lott left, Willis and Johnson returned. They gave samples of heroin and cocaine to Wallace. After testing the drugs, Mallory stated that he wanted to purchase a large amount of heroin. Willis and Johnson and several others were arrested when they attempted to sell a kilogram of heroin to Mallory. Monroe and Lott were arrested later when they returned to the hotel.

■■ This evidence is clearly sufficient to support the jury verdict. The crime of conspiracy is established once there is an agreement to engage in criminal activity and one or more overt acts are taken to implement the agreement. *United States v. Feola,* 420 U.S. 671, 694, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *United States v. Thompson,* 493 F.2d 305, 310 (9th Cir.), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974). The prosecution need not show the agreement to have been explicit. An implicit agreement may be inferred from the facts and circumstances of the case. *Iannelli v. United States,* 420 U.S. 770, 777 n.10, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *see Direct Sales Co. v. United States,* 319 U.S. 703, 709–15, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943). Thus, the agreement may be

---

1. The schedules have been published annually in the Code of Federal Regulations since 1972.

See 21 C.F.R. § 308 for 1972 and 1973, and 21 C.F.R. § 1308 for 1974 and 1975.

shown "if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." *United States v. Camacho,* 528 F.2d 464, 469 (9th Cir.) (citations omitted), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976).

■ Here the circumstances indicate that there was concert of action. Although Willis, Johnson and others were to obtain the drugs for transfer to Mallory, Monroe and Lott laid the groundwork for the transaction, brought the parties together and then acted as intermediaries. This divergent activity was all directed toward the common purpose of consummating the sale to Mallory.[2] *Compare United States v. Camacho, supra,* 528 F.2d at 470, *and United States v. Jones,* 425 F.2d 1048, 1051 (9th Cir.), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970). Thus there was evidence of an implicit agreement among Monroe, Lott, Willis, Johnson and others to obtain cocaine and heroin for transfer to Mallory, and also evidence of overt actions in furtherance of the agreement. On the basis of this evidence, a jury could have rationally concluded beyond a reasonable doubt that a conspiracy did exist and that Monroe and Lott were knowing participants in it. *United States v. Andrino,* 501 F.2d 1373, 1378 (9th Cir. 1974); *United States v. Gardner,* 475 F.2d 1273, 1275 (9th Cir.), *cert. denied,* 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973); *United States v. Nelson, supra,* 419 F.2d at 1242. Thus, the jury verdict must be sustained as to the conspiracy count.

### III

Monroe alleges that the district judge erred in refusing to grant a motion for judgment of acquittal when the evidence was insufficient to establish that Monroe was sane.

■ In reviewing this question, we must first face certain evidentiary complications peculiar to the insanity defense. The prob-

lem of sufficiency does not arise unless the defense first introduces evidence on the issue of sanity; until such evidence is produced, the accused is presumed sane. Once the accused introduces evidence to raise the issue of insanity, however, the government has the duty of proving sanity beyond a reasonable doubt. *Davis v. United States,* 165 U.S. 373, 378, 17 S.Ct. 360, 41 L.Ed. 750 (1897); *United States v. Shackelford,* 494 F.2d 67, 70 (9th Cir.), *cert. denied,* 417 U.S. 934, 94 S.Ct. 2647, 41 L.Ed.2d 237 (1974); *United States v. Ingman,* 426 F.2d 973, 976 (9th Cir. 1970).

■ In this case, Monroe introduced evidence to the effect that at the time he committed the crime, he had a mental disease or defect—a moderate to severe anxiety neurosis—and that the disease probably caused him to lack substantial capacity to conform his conduct to the requirements of the law. In this circuit, a defendant is insane within the meaning of the law if, at the time of the alleged criminal conduct, as a result of mental disease or defect, he lacked substantial capacity to conform his conduct to the requirements of the law or to appreciate the wrongfulness of his conduct. *Wade v. United States,* 426 F.2d 64 (9th Cir. 1970) (en banc). Thus, Monroe did raise the issue of insanity, thereby placing upon the government the burden of proving sanity beyond a reasonable doubt.

To meet its burden, the government called Dr. Levy who testified that Monroe was suffering from a chronic anxiety state, which was not severe, and that there was no evidence of a major mental illness. Dr. Levy also testified that he found nothing to indicate any impairment of Monroe's ability to conform his conduct to the requirements of the law.

On cross-examination, Dr. Levy testified that Monroe did not believe that it was morally wrong to deal in cocaine. Dr. Levy explained that answer by saying:

---

2. Because the evidence shows a single overall common purpose, there was only one conspiracy. *Blumenthal v. United States,* 332 U.S. 539, 558, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

Thus, Monroe is incorrect in his contention that the government charged one conspiracy and proved two.

Well, partially, he doesn't see cocaine as being a dangerous drug or one that should be considered illegal. He has used it, and he doesn't think there is anything terribly wrong with it, and he probably would feel that it shouldn't be illegal. So from that point of view, he doesn't see anything wrong with it.

On appeal, we must determine whether this evidence, considered most favorably to the government, was such as to permit a rational conclusion by the jury that the accused was sane beyond a reasonable doubt. *See United States v. Ortiz,* 488 F.2d 175, 177–78 (9th Cir. 1973); *cf. United States v. Nelson, supra,* 419 F.2d at 1242. We conclude that it was.

The jury could have chosen to believe the government witness, Dr. Levy, on the issue of Monroe's substantial capacity to conform his conduct to the requirements of the law. As to the issue of wrongfulness, Monroe makes much of Dr. Levy's discussion of Monroe's belief that it was not morally wrong to deal in cocaine. He insists that this shows insanity under the *Wade* test. However, Dr. Levy testified that Monroe believed that selling cocaine was not morally wrong because he did not consider cocaine to be a dangerous drug. Thus, the jury could conclude from Dr. Levy's testimony that Monroe's belief did not result from a mental disease or defect as required by *Wade. See United States v. Sullivan,* 544 F.2d 1052 (9th Cir., 1976). We cannot say, as a matter of law, that the conclusions of the jury were incorrect. The district court properly denied the motion for judgment of acquittal.

## IV

Monroe makes two contentions concerning errors in the conspiracy instructions. First, he asserts that the district judge erred in refusing an instruction that withdrawal prior to an *unlawful* overt act was a defense to a conspiracy charge. Instead the court instructed that withdrawal must precede *any* overt act. Monroe's challenge misapprehends the nature of the crime of conspiracy. The crime of conspir-

acy is complete once there is an agreement to accomplish an unlawful object and one or more overt acts are taken to implement the agreement. *United States v. Feola, supra,* 420 U.S. at 694, 95 S.Ct. 1255; *United States v. Thompson, supra,* 493 F.2d at 310. The overt act need not be unlawful. *Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *United States v. Thompson, supra,* 493 F.2d at 310; *Blumenthal v. United States,* 158 F.2d 883, 888 (9th Cir. 1946), *aff'd,* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947). Thus, to avoid complicity in the conspiracy, one must withdraw before any overt act is taken in furtherance of the agreement. The court's instruction properly stated this rule and there was no error.

In addition, Monroe argues that the court's instructions concerning the "Pinkerton doctrine" were incomplete and therefore erroneous. He agrees that the instructions given were correct insofar as they directed that a party can be held responsible for a substantive offense committed by a co-conspirator in furtherance of the conspiracy if (1) the offense was a foreseeable consequence of the conspiracy and (2) the party had not withdrawn from the conspiracy before the commission of the substantive offense. *Pinkerton v. United States,* 328 U.S. 640, 646–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). He argues, however, that the court erred in refusing his instruction concerning the time at which foreseeability is determined. According to Monroe, the act constituting the substantive offense must be foreseeable at or immediately prior to the time the act occurs.

We hold that there was no error. The Supreme Court in *Pinkerton* indicated that the substantive offense of a co-conspirator could not be attributable to other members of the conspiracy if the offense "was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Id.* at 648, 66 S.Ct. at 1184. The implication of this statement is that foreseeability must be determined in terms of the necessary or

natural consequences of the agreement. Thus, foreseeability must be determined when the agreement is made and not at or immediately before the time the substantive offense is actually committed.

## V

Both Monroe and Lott contend that they were prejudiced by prosecutorial misconduct. Alleging separate instances of misconduct, they argue that their convictions should be overturned and a new trial ordered. An analysis of the circumstances surrounding each incident of alleged misconduct demonstrates that the contentions of both Monroe and Lott must fail.

■■ During cross-examination of Lott, the prosecutor interrogated him concerning conversations he had had with agent Mallory. The prosecutor asked: "You never said anything about your prior involvement in California in drugs?" At this point, an objection to the question was made and Lott moved for a mistrial. Lott claims that the district judge erred in denying the motion. We disagree.

In his testimony, Lott gave a version of events considerably different from that testified to by Mallory. As part of his testimony, Lott denied ever selling drugs. Mallory had previously testified that Lott told him "that he had used heroin and sold heroin while in Oakland, California, and said that he had been through all kinds of drugs at one time or another." There had been no objection to this testimony. Thus the question put to Lott was a means of impeaching Lott's denial by reference to the prior inconsistent testimony which was already in the record. This is a proper means of impeachment. *Cf.* McCormick, Evidence § 34 (2d ed.). We hold that the district judge did not err in denying Lott's motion for a mistrial.

■■ Monroe's claim of misconduct relates to an offer to stipulate made by the prosecutor before the jury. The prosecutor said:

I am trying to establish, Your Honor, that the drug heroin, particularly in the

amount involved in this case, is a commercial quantity; that it is intended for further distribution rather than personal use.

If all defense counsel are willing to stipulate that it is a commercial quantity . . .

At this point, the district judge interrupted the prosecutor and excused the jury. The judge then told the prosecutor that such conduct could be prejudicial and should cease. Monroe's motion for a mistrial was denied; Monroe claims that this was error.

We do not need to reach the issue whether the prosecutor engaged in misconduct because any error was harmless. The proposed stipulation was irrelevant to the counts on which Monroe was ultimately found guilty. In addition, the trend of the questioning and the prompt interruption by the district judge all point to lack of prejudice. Thus, any error committed by the prosecutor was harmless.

## VI

■■ Both Monroe and Lott argue that because of errors in the jury instructions concerning the existence of isomers of cocaine and insufficiency of the evidence concerning the nature of the alleged cocaine, their conviction on count two, concerning distribution of 2.31 grams of cocaine, cannot be upheld. Both Monroe and Lott, however, were given concurrent sentences on counts two and three. Because the convictions on count three are unassailable, under the concurrent sentence doctrine we need not consider challenges to the convictions on count two. *United States v. Rodriguez,* 546 F.2d 302, 308 (9th Cir. 1976); *United States v. Murray,* 492 F.2d 178, 186 (9th Cir. 1973), *cert. denied,* 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974); *see Benton v. Maryland,* 395 U.S. 784, 787–91, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

AFFIRMED.