**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Luis OROPEZA and Mark James Minton, Defendants-Appellants.**

**No. 77–1291.**

United States Court of Appeals,
Ninth Circuit.

Nov. 8, 1977.

William J. Tway (argued) of Tway & Rowe, Boise, Idaho, Michael L. Schindele (argued), Boise, Idaho, for defendants-appellants.

Leslie H. Rowe (argued) of Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before DUNIWAY and WRIGHT, Circuit Judges, and BATTIN, District Judge.*

I.

EUGENE A. WRIGHT, Circuit Judge:

## INTRODUCTION

Oropeza and Minton appeal from convictions under a 16-count indictment for offenses arising from distribution of heroin.

The government showed a conspiracy to distribute heroin between appellants and George Alan Heinze from about August 20 to October 15, 1976.

Heinze pleaded guilty to 13 counts and made no challenge to his conviction and sentence. Appellants were tried to a jury and convicted of multiple offenses.

Oropeza was convicted of conspiracy to distribute heroin (count 1), possession of heroin with intent to distribute (counts 4, 8, 11 and 16), and distribution of heroin (counts 5, 9 and 12). He received a ten year sentence on count 1 and five year sentences on each of counts 4, 5, 8, 9, and 11, all running concurrently with the sentence on count 1. In addition, he was given consecutive five year sentences for counts 12 and 16, for a total of 20 years imprisonment.

Minton was convicted of conspiracy (count 1), possession with intent to distribute (count 11), and distribution of heroin (count 12). He was convicted also as an ex-felon in receipt of a firearm (count 14) and acquitted of a charge of carrying a firearm (count 15). Minton received a six year sentence on count 1, three years on count 11 (concurrent with count 1), three years on count 12 (consecutive to count 1), and one year on count 14 (consecutive to other sentences). He faces ten years imprisonment.

Oropeza challenges the sufficiency of the evidence and urges that the offenses of possession and distribution be merged. Minton also challenges the sufficiency of the evidence and asks that we find merger.

Minton contends that the conduct from which his firearms conviction arises is outside the statute's reach. He also alleges that the trial court erred in refusing to admit a hearsay statement exculpating him, in admitting a photograph of a weapon, in refusing to sever his trial from Oropeza's, in allowing a government witness to testify, and in refusing to give a requested instruction.

* Of the District of Montana.

## II.

### FACTS [1]

#### A. The August 21 Sale.

Heinze telephoned undercover agent Cornell several times on August 20 and 21, 1976. The two made arrangements for a heroin sale. On August 21, after calling Cornell, Heinze drove to Oropeza's residence. A car registered to Oropeza arrived shortly thereafter. Heinze conversed with the driver who was not positively identified.

Heinze immediately traveled to meet Cornell and they consummated a heroin sale. When Cornell expressed dissatisfaction with the weight of the package, Heinze said he had weighed it at the home of his source, but said that he would check the scales. Heinze indicated that his source was a dealer and that sales of larger quantities could be arranged. The meeting ended about 7:25 p. m. and Heinze returned to Oropeza's home about 8:00 p. m., followed shortly by Oropeza. They conversed and entered the house.

#### B. The September 1 Sale.

Heinze and Cornell arranged another sale by telephone on August 31 and September 1. Heinze was at Oropeza's residence during the latter call and shortly thereafter Heinze met Cornell and a heroin sale was completed. Heinze returned later to the Oropeza house and Oropeza left shortly after Heinze arrived.

#### C. The October 15 Transaction.

On October 10 and 15 Heinze and Cornell negotiated for a sale of one pound of heroin. During one telephone conversation between them at 1:05 a. m. on October 15, Heinze told Cornell he was going to call his source. Evidence showed that Heinze called Oropeza's house at 1:07 a. m. Heinze called Cornell again at 1:10 a. m. and said that he could arrange the sale.

At 2:30 a. m. Cornell received another call from Heinze. At this time Heinze's van was at Oropeza's house and a call was made from Oropeza's phone to Cornell at that time. Shortly before noon the same day, Heinze called Cornell yet again. He said a "kid" [meaning Minton] would be along with him at the sale. Cornell objected, but Heinze, nervous because of the quantity of heroin involved, was insistent.

Heinze's van was at Oropeza's house from 9:45 a. m. on October 15 until he and Minton left the house around noon. Minton carried an orange knapsack. Oropeza left the house shortly after the others. After one brief stop, Heinze and Minton parked at a shopping center. Meanwhile, Oropeza arrived in the area and, ostensibly walking his dog, remained a short distance away. It was here that he was later arrested.

Cornell arrived and sat in the passenger seat of the van while Minton lay on a mattress in the rear. Heinze took a package of heroin from the knapsack and handed it to Cornell. Cornell said it felt light. Minton explained how the heroin could be cut to yield at least a pound. Evidence indicated that a book in the knapsack was likely Oropeza's. Cornell started toward his car as though to retrieve the purchase money, but returned to the van and arrested Minton and Heinze.

During the arrest Heinze told Cornell that he was "covered" and at the same time Minton moved his hands. Agents later found a .357 magnum pistol partially covered by a blanket on the mattress where Minton had lain. Minton's fingerprints were not found on the gun.

In a search of Oropeza's house, agents found spare parts and ammunition for a .357 magnum pistol, a quantity of baggies, lactose (a heroin cutting agent), two scales, a quarter ounce of heroin (concealed in a kitchen mitt), and $1,500 cash. The money from the house, as well as that from Oropeza's wallet, did not match marked money used by Cornell in earlier drug purchases.

---

1. The facts are viewed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Eaglin, slip op. at 1795 (9th Cir. August 10, 1977).

## III.

### SUFFICIENCY OF THE EVIDENCE

#### A. *Conspiracy.*

■ Conspiracy is established when there is an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense. *United States v. Monroe*, 552 F.2d 860 (9th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977).

■ The government need not show an explicit agreement. *Iannelli v. United States*, 420 U.S. 770, 777 n.10, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *United States v. Monroe, supra.*

■ The criminal scheme may be inferred from circumstantial evidence, which is as probative as direct evidence. *Iannelli v. United States, supra*; *United States v. Peterson*, 549 F.2d 654, 657 (9th Cir. 1977).

■ Once a conspiracy is shown, there need be only slight evidence to link the defendant with it. *United States v. Turner*, 528 F.2d 143 (9th Cir.), *cert. denied sub nom. Grimes, et al. v. United States*, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975). The slight evidence

. . . must be of the quality which will reasonably support a conclusion that the particular defendant in question wilfully participated in the unlawful plan with the intent to further some object or purpose of the conspiracy.

*United States v. Freie*, 545 F.2d 1217, 1222 (9th Cir.), *cert. denied sub nom. Gangadean v. United States*, 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1976).

■ In reviewing the trial court's denial of a motion for acquittal the test we apply is the same as that of the trial court. *United States v. Kaplan*, 554 F.2d 958, *as amended* (9th Cir. 1977); *United States v. Leal*, 509 F.2d 122 (9th Cir. 1975). Viewing the evidence in the light most favorable to the government, the court must be satisfied that the jurors could reasonably decide that they would not hesitate to act in their own affairs upon factual assumptions as probable as the conclusion that the defendant is guilty. *United States v. Kaplan, supra*; *United States v. Nelson*, 419 F.2d 1237 (9th Cir. 1969).

We apply this test to the appellants' contentions.

■ 1. *Oropeza.* Oropeza attacks the trial court's refusal to grant his motion for acquittal on count 1. He contends the evidence was insufficient to show an existing conspiracy and his knowledge of and association with it.

Heinze indicated that he obtained heroin from one source. He admitted that he received only a small commission from each sale, the balance going to his source. The evidence clearly indicates existence of a conspiracy to distribute heroin between Heinze and another person at relevant times.

Furthermore, there is more than the requisite "slight evidence" to link Oropeza to the conspiracy. Oropeza knew Heinze and they spoke by telephone while Heinze was negotiating sales with Cornell. Heinze used Oropeza's telephone to set up one sale. Heinze set out from and returned to Oropeza's house before and after heroin sales. That house contained scales and other drug-related paraphernalia as well as spare parts for the .357 magnum pistol. Oropeza's book was in the knapsack with the heroin and he was in the immediate vicinity of the attempted sale on October 15.

There is sufficient evidence from which the jury could conclude that Oropeza participated in the conspiracy.

2. *Minton.* Minton also asserts error in the trial court's denial of his motion for acquittal on the conspiracy count.

On October 15, he was present at the Oropeza house immediately before the attempted heroin sale. He accompanied Heinze to the rendezvous with Cornell. He was in the rear of the van, near a pistol, during the transaction. When Cornell objected to the weight of the drugs, Minton volunteered his expertise on how the drug could be cut to yield more heroin.

■ One conspirator is liable for the acts of his coconspirators in furtherance of the conspiracy, *United States v. Testa*, 548 F.2d 847 (9th Cir. 1977), even when he may be unaware of some of the acts or actors. *United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970), *cert. denied, sub nom. Jacobs v. United States*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *United States v. Knight*, 416 F.2d 1181 (9th Cir. 1969). Acts and conduct such that reasonable men could conclude therefrom that an unlawful agreement or understanding existed and that the defendant with knowledge of its existence acted to further it is sufficient to support a conviction for conspiracy. *United States v. Knight, supra.*

■ Minton's actions were enough to allow a jury to conclude that he affiliated himself with an ongoing heroin distribution conspiracy.

### B. *Distribution of Heroin on October 15.*

■ Because we affirm the conspiracy convictions we need not consider the challenges to convictions for which sentences concurrent to the conspiracy sentence have been imposed. *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Monroe*, 552 F.2d 860 (9th Cir. 1977).

■ The sentences on count 12 (distribution of heroin on October 15), however, run consecutively to those for conspiracy, so we must pass upon their validity. First we consider whether there was a distribution on the date in question. The transfer of heroin was not completed before Minton and Heinze were arrested. However, the pertinent provisions of 21 U.S.C. § 802 are clear in defining a "distribution" as a "delivery" and in stating that an attempted transfer constitutes such a delivery.[2] The

October 15 transaction was a distribution within the meaning of the statute.

Evidence showed that a conspiracy existed until October 15, 1976 and Oropeza and Minton remained parties to it until that time. The distribution was made in furtherance of the conspiracy's illegal purpose. In addition, both Oropeza and Minton were active participants in the events of that day. The appellants are chargeable with the substantive distribution offense and the evidence supports their convictions. *United States v. Testa, supra; United States v. Roselli, supra.*

### C. *Oropeza's Separate Conviction for Possession of Heroin.*

Oropeza was separately convicted of possessing heroin with intent to distribute on October 15. The charge (count 16 of the indictment) stemmed from the discovery of approximately one quarter ounce of heroin in a kitchen mitt in Oropeza's residence. The court imposed a five-year sentence, consecutive to other sentences.

■ Possession comprehends such dominion and control as to give power to dispose of the drug. Exclusive power or dominion over property on which contraband is found is strong circumstantial evidence of possession, but mere association with or proximity to such property is insufficient to support a conviction for possession. *Arellanes v. United States*, 302 F.2d 603 (9th Cir.), *cert. denied* 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962).

■ There was evidence that Heinze was an addict, that Oropeza was a supplier but not a user of heroin, and that Heinze was a frequent visitor to the Oropeza house. Under such circumstances, the bare fact that a small quantity of heroin was found concealed in Oropeza's house is insufficient

---

**2.** 21 U.S.C. § 802. Definitions. As used in this title:

"(8) The term 'deliver' or 'delivery' mean the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship.

\* \* \* \* \* \*

"(11) The term 'distribute' means to deliver (other than by administering or dispensing) a controlled substance. The term 'distributor' means a person who so delivers a controlled substance."

evidence to support a conviction for possession of heroin with intent to distribute. *Arellanes v. United States, supra. See also United States v. Jones,* 518 F.2d 64 (9th Cir. 1975); *Murray v. United States,* 403 F.2d 694 (9th Cir. 1968).

### D. *Minton's Conviction as an Ex-Felon in Receipt of a Firearm Shipped in Interstate Commerce.*

Minton contends his conviction under 18 U.S.C. § 922(h)(1) is not supported by evidence. Alternatively, he argues that the statute is inapplicable because the gun had not moved in interstate commerce within three years.

█ Viewing the evidence in the light most favorable to the government, there was sufficient evidence to indicate Minton received the .357 magnum pistol. His proximity to the weapon in the van and the circumstances of the arrest indicated sufficient control over the weapon to support the conclusion that he had received it.

█ A three year delay between the time the weapon traveled in commerce and the time of receipt does not destroy the nexus required for conviction under the statute. *United States v. Haddad,* 558 F.2d 968 (9th Cir. 1977).

The conviction for receipt of the pistol is affirmed.

## IV.

## MERGER OF COUNTS 11 AND 12 (POSSESSION AND DISTRIBUTION ON OCTOBER 15)

█ Each appellant received a sentence for distribution of heroin consecutive to the sentence for possession with intent to distribute. We therefore consider their contention that the offenses should be merged and multiple punishments precluded.[3]

The Fifth Circuit has held that merger is not appropriate for these offenses in light of the "different evidence" required to convict for each. *United States v. Horsley,* 519 F.2d 1264 (5th Cir. 1975), *cert. denied* 424 U.S. 944, 96 S.Ct. 1413, 47 L.Ed.2d 350 (1976). The Fourth and Sixth Circuits have held that, when distribution is proven, and the sole evidence of possession is found in the distribution transaction, the offenses merge and consecutive sentences may not be imposed. *United States v. Stevens,* 521 F.2d 334 (6th Cir. 1975); *United States v. Curry,* 512 F.2d 1299 (4th Cir.), *cert. denied* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975). The Eighth Circuit appears to hold that possession is a lesser included offense of distribution.[4]

We are persuaded by the reasoning of *Curry* and *Stevens.* Because the offenses are found in the same statutory section[5] and because evidence of Congressional intent to impose multiple punishment for a single criminal act is lacking, we apply the reasoning of *Prince v. United States,* 352

3. The government contends that, because the sentences for possession with intent to distribute are concurrent with those for conspiracy, and because the distribution sentences are consecutive to the conspiracy sentences, the concurrent sentence doctrine operates to preclude review of this issue. However, the possession and distribution sentences are consecutive to one another, so the concurrent sentence doctrine does not apply. Moreover, the doctrine is discretionary. We may choose to scrutinize the convictions notwithstanding concurrent sentences when appropriate. *See United States v. Rodriguez,* 546 F.2d 302, 308 (9th Cir. 1976).

4. *United States v. Howard,* 507 F.2d 559 (8th Cir. 1974). In *Howard* the issue arose in the context of a jury verdict returned on instructions describing "possession" as a lesser included offense of "distribution." The instructions dealt with simple possession under 21 U.S.C. § 844(a) and distribution under § 841(a)(1). The case, therefore, is not directly in point, but its logic supports the merger theory. *Cf. United States v. Lindsay,* 552 F.2d 263 (8th Cir. 1977) (mail theft and possession of stolen mail merged).

5. 21 U.S.C. § 841. Prohibited Acts A—Unlawful Acts

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

"(1) to manufacture, *distribute,* or dispense, *or possess with intent to* manufacture, *distribute,* or dispense, a controlled substance; . . . ." (Emphasis added.)

U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) (bank robbery and entering a bank with intent to rob merge upon consummation of robbery); and *Heflin v. United States,* 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) (bank robbery and possession of stolen property merged). In those cases the Court found that Congress established separate offenses encompassing successive steps toward the same basic criminal act, intending to punish equally those who completed the act and those caught just short of completion.[6]

■ We find that Congress enacted the possession with intent to distribute provision of § 841(a)(1) to punish those who intended to distribute a controlled substance even though the distribution did not come to fruition, rather than to punish twice a distributor who necessarily possessed before distribution.

■ The evidence as to Oropeza's and Minton's convictions for possession with intent to distribute on October 15 arose only

from their association with the conspiracy and their actions in the October 15 distribution. The circumstantial evidence on which their possession convictions rest was identical to the evidence supporting their distribution convictions. We vacate the sentences imposed for these convictions and remand to the district court for resentencing.

## V.

## EXCLUSION OF HEINZE'S HEARSAY STATEMENT

Minton argues that the lower court erred in excluding evidence of Heinze's hearsay statement offered to exculpate Minton. In it Heinze averred that Minton was not involved in the heroin distribution scheme, that the .357 magnum pistol belonged to Heinze, and that Minton never "possessed" the pistol.

The court ruled that the statement was inadmissible under Fed.R.Ev. 804(b)(3)[7] be-

---

**6.** *See also United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976) (bank robbery and possessing proceeds of robbery); *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) (stealing government property and possession and concealment of stolen government property); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (multiple penalties improper for simultaneous transport of two women in violation of Mann Act). The Court has adopted a policy of "lenity when required to determine the intent of Congress in punishing multiple aspects of the same criminal act." *Heflin,* supra, 358 U.S. at 419, 79 S.Ct. at 453.

**7.** Rule 804. Hearsay Exceptions: Declarant Unavailable

"(a) Definition of unavailability.—'Unavailability as a witness' includes situations in which the declarant—

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or

(2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

(3) testifies to a lack of memory of the subject matter of his statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.

A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

"(b) Hearsay exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

"(3) Statement against interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissable unless corroborating circumstances clearly indicate the trustworthiness of the statement."

cause it lacked the necessary indicia of trustworthiness.[8]

■■■ Determination of admissibility under Rule 804(b)(3) is left to trial court discretion. *United States v. Guillette,* 547 F.2d 743 (2d Cir. 1976). Exercise of that discretion should be framed by a two-step analysis.

First, is the statement so contrary to the declarant's interest in avoiding criminal liability that a reasonable person in declarant's position would not have made the statement unless he believed it to be true? Second, do corroborating circumstances clearly indicate the trustworthiness of the statement? *United States v. Barrett,* 539 F.2d 244 (1st Cir. 1976); *United States v. Bagley,* 537 F.2d 162 (5th Cir. 1976).

■■■ Heinze's statement was merely a general assertion of Minton's innocence rather than an assertion of his own culpability.[9] There was nothing in it that would necessarily subject Heinze to criminal liability.[10]

Furthermore, there was insufficient corroborating evidence to indicate its trustworthiness. Factors relevant to trustworthiness include:

(a) the time of the declaration and the party to whom it was made;

(b) the existence of corroborating evidence;

(c) the extent to which the declaration is really against the declarant's penal interest; and

(d) the availability of the declarant as a witness.

*See United States v. Guillette, supra,* at 754, *quoting Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1975).[11]

The statement here was not spontaneous, but was given after the declarant had been arrested and jailed. It was given to Minton, its proponent at trial. There was scant corroborating evidence. As previously discussed, it was not truly inculpatory of declarant. Finally, Heinze's unavailability was questionable.

The trial court did not err in excluding the statement.

## VI.

## OTHER ALLEGED ERRORS

Minton's assertions that the trial court committed other errors requiring reversal we find to be without merit.

**8.** Rule 804's exceptions operate only when the declarant is unavailable. The court intimated that Heinze was not "unavailable" as required by the rule. There were indications that, if called, Heinze would assert his privilege against self-incrimination. However, Heinze never expressly asserted the privilege. Because the rule requires a finding of unavailability, an express claim of privilege and a ruling thereon should be made. *See* 4 Weinstein's Evidence ¶ 804(a)[01] (1976). For purposes of this opinion, however, we assume that Heinze was unavailable within the meaning of the rule.

**9.** The pertinent part of Heinze's statement read:

"I, George Heinze wish to make the following statements clear to the court. On the day of October 15, 1976, I was arrested and jailed on drug charges. Also arrested was Mark J. Minton. I wish to make it clear that he had no idea of the transaction that took place on the day of October 15. He was charged with aiding and abetting in the incident. Charged with possessing a loaded firearm. I wish to make it clear that the gun was owned by me, George Heinze. It was never in Mr. Minton's

possession. The serial number on the gun which is a Dan Wesson is D.W. 22204. Also like to make it clear the charge of conspiracy Mr. Minton again is innocent." [sic] (Punctuation added.)

**10.** Although Heinze asserted *ownership* of the weapon, he did not admit *possession* of it at the time of arrest. He merely stated that Minton never possessed it. There is nothing in the record to indicate that it would have been a crime for Heinze to own such a weapon.

**11.** We agree with appellant that the *Chambers* factors should not be applied inflexibly or unrealistically and that Fed.R.Ev. 804(b)(3) may be more inclusive than the *Chambers* due process standards. *See United States v. Barrett, supra.* But see *Lowery v. Maryland,* 401 F.Supp. 604 (D.Md.1975), *affirmed* 532 F.2d 750 (4th Cir. 1976). However, in the circumstances of this case, such considerations are of no assistance to appellant. Under any meaningful application of standards gauging trustworthiness this statement would be excluded.

He asserts the court erred in allowing Cornell to testify. The judge had excluded all prospective witnesses from the courtroom when the trial began and indicated that any who remained would not be allowed to testify. Cornell remained and later testified over defense objection.

 Sequestration of witnesses and sanctions for violations of a sequestration order are matters within the discretion of the court. *Taylor v. United States,* 388 F.2d 786 (9th Cir. 1967). A witness is not disqualified merely because he remains in the courtroom after a sequestration order. *Spindler v. United States,* 336 F.2d 678 (9th Cir. 1964).

 The defendants did not object to Cornell's presence until it was time for him to testify. The court stated that it would have excepted Cornell from the sequestration order upon the government's request. Further, there is no showing of prejudice. There was no error.

 Error is also alleged in the admission in evidence of a photograph of the .357 magnum pistol, fully exposed. Minton argues that, because the pistol was partially covered by a blanket when discovered, the photograph was unduly prejudicial. However, testimony about the photograph clearly conveyed the circumstances of the weapon's discovery. There was no resulting prejudice from introduction of the photograph into evidence and, therefore, no error.

 Minton also urges reversal because the trial court refused to sever his trial from that of Oropeza. A motion for relief from prejudicial joinder is directed to the discretion of the court and reversal is proper only when denial of severance amounts to an abuse of discretion. *United States v. Gulma,* 563 F.2d 386, slip op. at 2189 (9th Cir. 1977); *United States v. Marshall,* 532 F.2d 1279 (9th Cir. 1976). There was no such abuse here. There is no indication that the jury was unable to appraise the evidence against each defendant in accord with the court's admonitions and instructions. *See United States v. Campanale,* 518 F.2d 352 (9th Cir. 1975).

 Minton's final assertion is that the court erred in refusing to give his proposed instruction that the circumstantial evidence against him must be "absolutely incompatible upon any reasonable hypothesis other than that of the guilt of the accused." The instruction did not reflect the law of this circuit and was properly refused. *United States v. Kelly,* 527 F.2d 961 (9th Cir. 1976); *United States v. Nelson,* 419 F.2d 1237 (9th Cir. 1969).

## VII.

## CONCLUSION

Oropeza's conviction for possession of heroin with intent to distribute under count 16 of the indictment is reversed. The consecutive sentences for counts 11 and 12 are vacated and remanded for resentencing. Oropeza's convictions are in all other respects affirmed.

Minton's sentences for counts 11 and 12 are also vacated and remanded for resentencing. His convictions are in all other respects affirmed.

Enlargement on bond is revoked now as to both defendants. The clerk will issue the mandate at once.