**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Joseph SATTERFIELD, Defendant-Appellant.**

No. 77–2354.

United States Court of Appeals, Ninth Circuit.

March 22, 1978.

Stephen A. Houze (argued), of Portland, Or., for defendant-appellant.

Jack C. Wong, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before WRIGHT and SNEED, Circuit Judges, and RENFREW,* District Judge.

RENFREW, District Judge:

Satterfield appeals from his convictions for bank robbery and associated firearms violations.

On October 9, 1974, a grand jury returned a ten-count indictment charging Satterfield and Merriweather with several bank robberies and firearms violations. Counts V and VII (the bank robbery counts) charged Satterfield with robbing two Oregon banks with Merriweather in violation of 18 U.S.C. § 2113(a), and Counts VI and VIII (the firearms counts) charged him with aiding and abetting Merriweather in violations of 18 U.S.C. § 924(c), which makes it unlawful to "carr[y] a firearm unlawfully during the commission of any felony for which [the defendant] may be prosecuted in a court of the United States." The other counts involved bank robberies and firearms violations which Merriweather committed by himself.

Merriweather and Satterfield were tried together and convicted on all counts, and both appealed. The Court of Appeals for the Ninth Circuit affirmed Merriweather's convictions, *United States v. Merriweather*, 551 F.2d 314 (9 Cir. 1977), rejecting, *inter alia*, Merriweather's challenge to the requirement that he wear disguises before the jury. Satterfield's convictions were reversed because of improper joinder. *United States v. Satterfield*, 548 F.2d 1341 (9 Cir. 1977).

Satterfield was again prosecuted and convicted on all four counts. Two eyewitnesses to each of the two bank robberies identified Satterfield with a stocking mask on as one of the robbers. Two eyewitnesses identified Satterfield as one of the unmasked men leaving the scene of the bank robberies. Three of Satterfield's co-workers also identified him as one of the robbers in the bank surveillance photographs.

On June 10, 1977, the trial court sentenced Satterfield to twenty years' imprisonment on each bank robbery count and ten years on each firearms count with all sentences to run concurrently but consecutive to a sentence in an unrelated 1966 Indiana bank robbery conviction.

I. *The Wearing of the Disguises*

Appellant made timely motions that he should not be required to wear stocking masks before the jury. He contends that the denial of these motions was error, although he does not articulate specific reasons why the prejudicial effect of wearing the disguises outweighed the probative value in the circumstances of this case.

The trial court required Satterfield to put on the masks on three occasions during the trial. On each of the first two occasions, two eyewitnesses to the robberies were in the courtroom, which reduced the number of maskings from four to two. The purpose of the third showing was to permit the jury to compare Satterfield's masked appearance with the appearance of the robbers in bank surveillance photographs introduced into evidence. On each of those three occasions, Satterfield put on and took off the mask outside the presence of the jury, so the jury saw Satterfield masked for the shortest possible time that permitted the eyewitnesses and jury to view him fairly. In addition, some witnesses identified Satterfield in a line-up where all the participants were masked, and photographs of those line-ups were introduced in evidence.

---

* Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

■ The manner in which in-court identifications are conducted rests within the sound discretion of the trial court. *United States v. Williams,* 436 F.2d 1166, 1168 (9 Cir. 1970); *United States v. King,* 433 F.2d 937, 938 (9 Cir.), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1681, 29 L.Ed.2d 142 (1970). The trial court did not abuse its discretion here. The ability of the eyewitnesses to identify Satterfield as the masked robber is certainly probative, and the fact that they had made similar identifications in Satterfield's first trial and at some lineups does not destroy the probative value of the last in-court identification. The wearing of the disguises aided the jury in its fact-finding function. By seeing for itself Satterfield in disguises, it could better evaluate the ability of the eyewitnesses to recognize a masked person on different occasions. The third wearing of the disguises also helped the jury to judge for itself whether the individual in the bank surveillance photographs was Satterfield.

The probative value outweighed the prejudicial effect, which was minimized by limiting both the time during which the jury saw appellant in disguise and the number of times on which he had to put on the mask.

II. *The Exclusion of the Statement Against Interest*

Before trial, Satterfield moved for a ruling on the admissibility of certain statements by his codefendant, Merriweather, which tended to exculpate Satterfield. The trial court held a hearing on that motion. See Fed.R.Crim.P. 17.1.

Despite an offer of immunity, Merriweather testified that he would not under any circumstances testify about those statements exculpatory of Satterfield. Satterfield testified that he and Merriweather had an argument at Leavenworth Penitentiary in the fall of 1976 along the following lines. Satterfield asked Merriweather why he would not admit that Satterfield was not involved in either robbery; Merriweather responded that he did not want to jeopardize his own appeal or send his "crime partner" to jail, and that he thought that both

his and Satterfield's convictions would be reversed on appeal anyway. Two other inmates, Rosales and Barron, who were friends of Satterfield, testified that they overheard the same argument, and Satterfield offered to prove that another two inmates, Morgan and Rux, overheard it as well. According to Barron and Rosales, Merriweather also accused Satterfield of causing the break-up of his marriage. Rosales and Barron also testified about separate subsequent conversations with Merriweather in which he told them, in effect, that Satterfield was not his accomplice. The Government introduced evidence that none of the prison staff reported any argument between Merriweather and Satterfield on the day it allegedly occurred although disputes of its alleged intensity were generally broken up and reported, and that Rux and Morgan were not in the cellblock where the argument occurred when it occurred. Based on this hearing, the trial court denied the motion.

■ Rule 804(b)(3) of the Federal Rules of Evidence provides:

"A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." (Footnote omitted.)

"Determination of admissibility under Rule 804(b)(3) is left to trial court discretion. *United States v. Guillette,* 547 F.2d 743 (2d Cir. 1976)." *United States v. Oropeza,* 564 F.2d 316, 325 (9 Cir. 1977). The standard for appellate review of a decision to exclude a hearsay statement under Rule 804(b)(3) is whether the trial court abused its discretion. *Cf. United States v. Bagley,* 537 F.2d 162, 166–167 (5 Cir. 1976).

Under Rule 804(b)(3), the proponent of evidence offered to exculpate the accused here had to establish three elements: (1) that the declarant was unavailable; (2) that the statement "at the time of its making * * * so far tended to subject [the declarant] to * * * criminal liability * * that a reasonable man in his position would not have made the statement unless he believed it to be true"; and (3) that "corroborating circumstances clearly indicate the trustworthiness of the statement." *See United States v. Oropeza, supra,* 564 F.2d at 325 & n.8.

### 1. *Unavailability*

The trial court ruled, and the parties agree, that Merriweather was unavailable within the meaning of Rule 804(a)(2).

### 2. *Statement Against Interest*

 The statement could have been used against Merriweather at a retrial if his conviction had been reversed. The inevitable uncertainty about the outcome of criminal appeals makes it difficult to know whether a reasonable person[1] would have considered the likelihood of success of the appeal great enough to deter him from making the statement unless he believed it to be true. None of the errors alleged by Merriweather was so blatant that a reasonable layperson would have been confident of the success of the appeal.

If Congress had wanted courts to take a restrictive approach to whether a statement is against penal interest, it would not have chosen "the broadly worded phrase 'tended to subject'" in Rule 804(b)(3). *United States v. Benveniste,* 564 F.2d 335, 341 (9 Cir. 1977). Accordingly, Merriweather's statement was against his penal interest within the meaning of the Rule, but the low objective likelihood of reversal of his convictions reduces "the extent to which the declaration is really against the declarant's penal interest," *United States v. Oropeza,*

*supra,* 564 F.2d at 325, and therefore reduces its trustworthiness.

### 3. *Corroborating Circumstances*

Corroborating circumstances do not clearly indicate the trustworthiness of Merriweather's alleged statement.

A threshold question is whether Rule 804(b)(3) authorizes an inquiry into the trustworthiness of the declarant only or of the witness as well. The Courts of Appeal are split. *Compare United States v. Bagley, supra,* 537 F.2d at 167 (trustworthiness of witness relevant), *with United States v. Atkins,* 558 F.2d 133, 135 (3 Cir. 1977) (trustworthiness of witness irrelevant).

 A strong argument can be made that the credibility of the witness is irrelevant to admissibility under Rule 804(b)(3), which is basically a hearsay rule. A test for admissibility of hearsay statements based on the credibility of the witness who testifies about the statement is unrelated to the purpose of the general rule against hearsay. Hearsay statements are usually excluded because the declarant is unsworn and unavailable for cross-examination and because the jury cannot evaluate his demeanor. Advisory Committee's Introductory Note on the Hearsay Problem, 56 F.R.D. 183, 288–289. Consistently with these rationales, exceptions to the hearsay rule in Rules 803 and 804 are made because the circumstances of the declaration indicate that the declarant's perception, memory, narration, or sincerity concerning the matter asserted in the statement (*see id.,* 56 F.R.D. at 288) is trustworthy. The jury can evaluate the perception, memory, narration, and sincerity of the witness who testifies about the hearsay declaration, and that witness testifies under oath and subject to cross-examination. To exclude a hearsay statement because of doubt that it was made is to exclude it not because of its

1. The test under Rule 804(b)(3) involves the perception of a reasonable person in Merriweather's position, not of Merriweather himself. Merriweather's statements of concern about jeopardizing his appeal are therefore irrelevant to whether the statement is a statement against penal interest within the meaning of the Rule, although they may constitute a corroborating circumstance indicating trustworthiness. *See* p. 693, *infra.*

hearsay nature but for some other reason. Although some other rule of evidence (possibly Rule 403) may give the judge the authority to exclude evidence on that other basis, Rule 804(b)(3), to the extent that it is a hearsay rule, does not.

■ Furthermore, interpreting Rule 804(b)(3) to authorize the trial judge to pass on the credibility of the witness would implicate difficult constitutional questions. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) (exclusion of hearsay declaration against penal interest). In *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court struck down on constitutional grounds a state rule disqualifying alleged accomplices from testifying on behalf of defendants in criminal cases. If a court cannot prevent an alleged accomplice from testifying for a defendant because he may not tell the truth, a court may not be able to prevent, at least under certain circumstances, a witness from testifying for a defendant about an alleged accomplice's statement against penal interest because the witness may not tell the truth. The constitutional dilemma would be most acute in a case where circumstances clearly corroborate the matter asserted in the declarant's statement (that is, if the declarant made the statement, it may well have been true) and where circumstances clearly indicate that the statement was never made.[2]

Some factors indicate that Rule 804(b)(3) was intended to give judges at least limited power to exclude an exculpatory statement of alleged accomplices because corroborating circumstances do not clearly indicate the trustworthiness of the witness. First, the Rule refers to the trustworthiness of the statement, not of the declarant, and that formulation may be broad enough to put the trustworthiness of the witness as well as the declarant at issue. Second, some portions of the legislative history suggest that the draftsmen intended Rule 804(b)(3) to be more than purely a hearsay rule. Some relevant excerpts from the legislative history are set out in *United States v. Bagley, supra,* 537 F.2d at 167, and in addition, the Advisory Committee on the Federal Rules of Evidence noted that "one senses in the decisions a distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication *either of the fact of the making* of the confession or in its contents \* \* \*." Advisory Committee's Note on Rule 804(b)(3), 56 F.R.D. 183, 327 (emphasis added). If a court should exclude such a statement if the declarant could not know what he was talking about because he was in jail at the time of the crime, see 4 Weinstein's Evidence ¶ 804(b)(3)[03], at 804–90 (1977), perhaps it should exclude such a statement if the witness could not know what he was talking about because he was in a different jail than the declarant at the time of the alleged statement (as is true of Morgan and Rux in this case).

It is unnecessary for the Court to decide whether Rule 804(b)(3) ever empowers a judge to exclude hearsay evidence because of the untrustworthiness of the witness or whether it empowers exclusion of that evidence on that ground in the specific circumstances of this case. The trial court made clear that it excluded testimony about Merriweather's alleged statement only because clear circumstances corroborating Merriweather's veracity were absent. Because the trial judge did not abuse his discretion by limiting his ruling to a narrow ground or by excluding the statement on that ground, his ruling can be affirmed without reaching the broader issue. The Court therefore assumes that Merriweather made the statements which Satterfield, Rosales, and Bar-

---

**2.** That is not to say that Rule 804(b)(3) conflicts with any constitutional right. "Clearly the federal rule is no more restrictive than the Constitution permits, and may in some situations be more inclusive." *United States v. Barrett,* 539 F.2d 244, 253 (1 Cir. 1976). To the extent that the trustworthiness of the witness is relevant to admissibility under Rule 804(b)(3), the Rule should be interpreted in light of these constitutional considerations. *See id.,* 539 F.2d at 253; *United States v. Benveniste, supra,* 564 F.2d at 341–342.

ron testified he made and that he made them in the circumstances about which they testified. The only issue involves the truth of the matters which Merriweather asserted in those statements.

■ Some circumstances do corroborate the trustworthiness of Merriweather's alleged statements to Satterfield, Rosales, and Barron:

(1) That Merriweather made the exculpatory statement to Satterfield during the course of an apparent argument suggests it was spontaneous and therefore more reliable. *Cf.* Fed.R.Evid. 803(2) (excited utterances).

(2) Merriweather's stated concern about jeopardizing his appeal suggests that he in fact believed the statement to be against his penal interest.

(3) The alleged bad feelings between Merriweather and Satterfield involving the former's wife would make Merriweather less likely to make untrue statements exculpatory of Satterfield.

Other circumstances, however, indicate that the statements are untrustworthy:

(1) The low likelihood of the success of Merriweather's appeal makes the declaration almost risk-free from his perspective. *See* p. 691, *supra.* Merriweather's stated optimism about the outcome of his appeal is simply not very credible.

(2) The substantial length of time between the robberies, which occurred in the late summer of 1974, and the declarations, which occurred in the fall of 1976, reduces their trustworthiness. *United States v. Oropeza, supra,* 564 F.2d at 325.

(3) Merriweather's statement to Rosales and Barron accusing Satterfield of causing the break-up of Merriweather's marriage, which was not itself against Merriweather's penal interest, was not sufficiently integral to the entire statement to be admissible under Rule 804(b)(3), as the trial court ruled. *See United States v. Barrett,* 539 F.2d 244, 252–253 (1 Cir. 1976). Merriweather could have concocted it along with the exculpatory portions of his statement in an effort to lend credibility to his attempt to clear Satterfield of any complicity in the bank robberies. Other than Merriweather's statement, no evidence substantiates the claim that Merriweather believed Satterfield to be involved with his wife or even that his marriage had failed.

■ Eight witnesses identified Satterfield as the robber, although a ninth eyewitness could not make an identification. The identification testimony was strong and contradicted the possibility that Satterfield was not Merriweather's accomplice. Satterfield's alibis for both of the robberies were strongly impeached, and his alibi for the first was virtually demolished. The absence of corroboration for Merriweather's version of the crimes distinguishes this case from *United States v. Benveniste, supra,* 564 F.2d 335, where the declarant's version of the crime was consistent with and corroborated by some other evidence.

■ Under Rule 804(b)(3), the corroborating circumstances must do more than tend to indicate the trustworthiness of the statement; they must *clearly* indicate it. There is good reason to believe that Merriweather staged the argument with Satterfield's help and that his alleged statements to Rosales and Barron were also fabricated. The trial court did not abuse its discretion in denying Satterfield's motion to admit this evidence.

### III. *The Firearms Counts*

Satterfield finally contends that the trial court's denial of his motion for acquittal based on *United States v. Akers,* 542 F.2d 770 (9 Cir. 1976), constituted error because Merriweather's carrying of the gun during the bank robberies was not itself independently unlawful within the meaning of 18 U.S.C. § 924(c)(2).

■ Because Satterfield's sentences on the firearms counts run concurrently with those on the bank robbery counts, his contentions concerning the firearms convictions need not be considered under the concurrent sentence doctrine. *United States v. Oropeza, supra,* 564 F.2d at 322.

AFFIRMED.

SNEED, Circuit Judge (concurring in result).

The opinion of the court avoids deciding whether the untrustworthiness of a witness can be considered by the judge in determining whether to exclude a hearsay statement pursuant to the last sentence of Rule 804(b)(3), Fed.R.Evid. This was accomplished by explicitly assuming that Rosales and Barron heard Merriweather make the statements about which they testified and that their testimony accurately reflected what they heard. This assumption is not consistent with the Government's evidence that the prison staff reported no argument between Satterfield and Merriweather which Rosales and Barron testified they overheard.

This inconsistency strongly suggests to me that we should decide, rather than avoid, the issue about which there is a split of authority within the circuits. Were we to so decide, I would hold that the trial judge in applying the last sentence of Rule 804(b)(3) could evaluate the trustworthiness of a witness to the alleged statement which tended to expose the declarant to criminal liability. This evaluation, I suggest, should be made cautiously and with full awareness of the defendant's constitutional right to present witnesses in his behalf. Exclusion of the statement should not rest exclusively on the supposed untrustworthiness of the witnesses thereto. Such untrustworthiness should be rendered of little consequence when there exist other circumstances which tend to corroborate the statement.

On the other hand, where corroborating circumstances do exist the *trustworthiness* of the witnesses when such exists should be considered an additional corroborating circumstance. For this reason I would treat the *assumed* trustworthiness of Rosales and Barron as a corroborating circumstance to be listed with those identified by the majority.

My differences with the majority do not lead me to a result different from theirs. Like them I find Merriweather's statement untrustworthy; unlike them, however, I believe this untrustworthiness of the statement is corroborated by what I believe to be the untrustworthiness of the witnesses, Rosales and Barron. In any event, the trial court under the circumstances of this case did not err in my view even if in fact it did believe Rosales and Barron were untrustworthy and regarded that as a circumstance indicating that Merriweather's alleged statement was untrustworthy. Therefore, Satterfield's conviction should be affirmed.