**George Larry GARROUTTE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7457.**

Court of Appeals of Alaska.

May 18, 1984.

Kevin F. McCoy, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Richard W. Maki, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

George Larry Garroutte was charged by indictment with one count of theft by taking in the second degree and one count of theft by receiving in the second degree. AS 11.46.100(1); AS 11.46.130(a)(1); AS 11.-46.190. Following a jury trial, Garroutte was convicted of theft by receiving and acquitted of theft by taking. Superior Court Judge Seaborn J. Buckalew sentenced Garroutte to serve four years in prison. Garroutte appeals, contending that the trial court improperly excluded a statement against penal interest made by his co-defendant, Richard Snyder. In addition, Garroutte argues that the court erred in admitting evidence that guns were found in a truck driven by Garroutte and Snyder on the night of the offense and in denying Garroutte's motion for a new trial. Garroutte also argues that his sentence is excessive. We affirm Garroutte's conviction, but remand for amendment of the sentence.

## FACTS

On the night of April 7, 1982, an Alaska State Trooper stopped a blue pickup truck traveling towards Anchorage on the Parks Highway near Wasilla. George Garroutte was driving the truck, and Richard Snyder was in the passenger's seat. A large quantity of heavy electrical cable was in the bed of the truck. The trooper arrested Snyder on an outstanding federal warrant for a parole violation. Garroutte was cited for driving while his license was suspended. Since no one was left to drive the truck, it was impounded. A routine inventory search later disclosed two loaded handguns, one under the driver's seat and the other under the passenger's seat.

On the next morning, troopers received a report that approximately 500 feet of electrical cable had been stolen during the night from a gravel pit operated by the M.B. Construction Company near Wasilla. Investigation confirmed that the cable in the impounded pickup truck was stolen from the M.B. Construction Company. Garroutte and Snyder were subsequently charged with the theft.

Snyder eventually entered a plea of guilty to the charge. Jay Seymore, the probation officer assigned to write Snyder's presentence report, interviewed Snyder prior to his sentencing hearing. Snyder admitted stealing the cable but told Seymore that he had been assisted by Gregory Hayes [1] and that Garroutte was

---

1. The record indicates that Gregory Hayes was an acquaintance of both Garroutte and Snyder.

At the time of the offense, Garroutte rented a room from Hayes at Hayes's home. Hayes was

innocent of the offense. Seymore included a summary of Snyder's statement in his presentence report.

Garroutte was tried after Snyder had already been sentenced. At Garroutte's trial, the state attempted to call Snyder as a witness. Despite offers of state and federal immunity, and despite a finding of contempt by the court, Snyder refused to testify. Based on Snyder's unavailability as a witness, Garroutte offered to call Seymore as a witness to testify about Snyder's statement to Seymore, which exculpated Garroutte. Judge Buckalew ruled that the statement was hearsay and was not within any exception to the hearsay rule. He therefore excluded it.

## EXCLUSION OF EXCULPATORY EVIDENCE

### 1. Statement Against Penal Interest

Garroutte contends that testimony of Snyder's statement to Seymore should have been admitted because it fell within the hearsay exception for statements against penal interest. Alaska Rule of Evidence 804(b)(3) provides:

(b) *Hearsay Exceptions.* The following are not included by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the*

*trustworthiness of the statement.* [Emphasis added.]

Although this rule has not previously been interpreted in Alaska, Federal Rule of Evidence 804(b)(3), which is virtually identical, has received considerable attention. The federal cases generally require that three criteria be met before evidence of a statement against penal interest can be admitted to exculpate the accused in a criminal trial:

To be admissible under [Federal Rule of Evidence] 804(b)(3), a statement must meet three tests: the declarant's testimony must be unavailable; the statement must so far tend to subject the declarant to criminal liability "that a reasonable man in his position would not have made the statement unless he believed it to be true"; and the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness.

*United States v. Thomas,* 571 F.2d 285, 288 (5th Cir.1978). *See also United States v. MacDonald,* 688 F.2d 224, 232–33 (4th Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983).

In the present case, no question of unavailability is presented. Judge Buckalew found that Snyder was unavailable by virtue of his refusal to testify, and this finding has not been challenged by the state. There is a substantial question, however, whether Snyder's statement was against his penal interest and whether it was adequately corroborated.

Snyder's statement that Garroutte was not involved in the theft was not, standing alone, against Snyder's interest. The portion of Snyder's statement that exculpated Garroutte can be deemed to be against Snyder's penal interest only if it is read in conjunction with the portion of the statement in which Snyder personally admitted guilt. There is authority holding that a

apparently aware of the federal warrant that had been issued for Snyder, and, several weeks prior to the offense, he had informed a federal probation officer that Snyder could be located in the Wasilla area. On the night of the offense,

Hayes provided information to the Alaska State Troopers that led to Snyder's arrest. Hayes subsequently testified before the grand jury that indicted Snyder and Garroutte.

statement exculpating another person may be deemed to be against the penal interest of the declarant when the exculpatory statement is an integral part of a confession or when it creates an inference that the declarant was the guilty party. *See, e.g., United States v. Thomas,* 571 F.2d at 288; *United States v. Goodlow,* 500 F.2d 954, 956 (8th Cir.1974). Here, the portion of Snyder's statement that exculpated Garroutte was closely connected to his statement admitting guilt and implicating Hayes. Nevertheless, because Snyder's admission of guilt to Seymore occurred after Snyder had already entered a plea of guilty to the theft, it is difficult to view the admission as one that would actually have exposed Snyder to additional criminal liability. As the state correctly notes, Snyder's candid admission of guilt to his presentence probation officer might actually have worked to his benefit at sentencing.

Garroutte argues that the exculpatory portion of Snyder's statement could have resulted in a harsher sentence if the statement was determined to be false. While this argument may be correct, the extent to which the statement exposed Snyder to liability is attenuated by the strong possibility that the statement would not be determined to be false. Snyder's admission was not, on its face, contrary to his penal interest when made. The likelihood that the truthfulness of the statement could not be ascertained prior to Snyder's sentencing makes it doubtful whether Snyder would reasonably have been deterred from making a false statement to Seymore.

■ There is, however, sound authority for the proposition that Evidence Rule 803(b)(3) should be construed broadly in determining whether a statement meets the requirement of being against penal interest:

> If Congress had wanted courts to take a restrictive approach to whether a statement is against penal interest, it would not have chosen "the broadly worded phrase 'tended to subject'" in Rule 804(b)(3). *United States v. Benveniste,* 564 F.2d 335, 341 (9th Cir.1977).

*United States v. Satterfield,* 572 F.2d 687, 691 (9th Cir.), *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978). *See also United States v. Thomas,* 571 F.2d at 288. It should nonetheless be recognized that an out-of-court statement exposing the declarant to only a slight possibility of prosecution or punishment will tend to be less trustworthy; this factor may in turn be considered in determining the extent of corroboration necessary to meet the requirements of Rule 804(b)(3). *See United States v. Satterfield,* 572 F.2d at 691. Because we believe that Snyder's statement to Seymore was not adequately corroborated, we will assume that it tended to expose him to a sufficient threat of criminal liability to satisfy the requirement of being against penal interest.

In considering the issue of corroboration, federal courts have consistently emphasized that under Evidence Rule 803(b)(3), corroboration will be deemed sufficient only if it clearly indicates the trustworthiness of an out-of-court statement exculpating the accused. *See United States v. Satterfield,* 572 F.2d at 693; *United States v. Alvarez,* 584 F.2d 694, 701 (5th Cir.1978); *United States v. Bagley,* 537 F.2d 162, 167 (5th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977). Garroutte argues that Snyder's statements are corroborated by evidence indicating that Garroutte made statements shortly after the offense asserting his own innocence. He also claims that corroboration is provided by evidence that he was injured and incapable of lifting heavy electrical cable at the time of the offense. We do not find these arguments persuasive.

Garroutte's own professions of innocence are obviously self serving, and while they might establish lack of recent fabrication, they do little to enhance the credibility of Snyder's out-of-court statement. Evidence of Garroutte's injuries also fails to provide significant corroboration. As indicated by Garroutte's conviction of theft by receiving instead of theft by taking, it is entirely possible that he was not directly involved in loading the stolen cable into the pickup

truck. Nothing in the evidence at trial precluded the possibility that Snyder and Garroutte were assisted by others. Moreover, testimony indicated that the stolen electrical cable could have been loaded into the truck by one person.

The weakness of the corroborating evidence in this case is further underscored by the circumstances indicating that Snyder's statement to Seymore might have been fabricated. As we have already noted, the fact that Snyder's statement was only marginally against his penal interest bears directly on its trustworthiness. Snyder's statement was not spontaneous, and circumstances suggest that Snyder might have been highly motivated to give his probation officer a false story. As an integral part of his statement, Snyder claimed that Gregory Hayes had helped him to steal electrical cable. At the time Snyder made this claim, however, he was well aware that Hayes was the person who had provided authorities with information that led to his arrest and that Hayes had testified against both Snyder and Garroutte before the grand jury.

■ The corroboration requirement of Evidence Rule 804(b)(3) recognizes a significant risk that out-of-court statements purporting to exculpate the accused in a criminal proceeding may be unreliable. The commentary to the rule states:

> When [a statement against penal interest] is offered by the accused by way of exculpation, the resulting situation is not adapted to control by rulings as to the weight of the evidence, and hence the provision [Rule 804(b)(3) ] is cast in terms of a requirement preliminary to admissibility. *Cf.*, Rule 104(a). The requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication.

Evidence Rules Commentary at 256–57. Here, when we consider the evidence in its entirety, we cannot conclude that there are corroborating circumstances clearly indicating the trustworthiness of Snyder's statement. Accordingly, we hold that Judge Buckalew did not err in excluding evidence of the statement at trial. *See United States v. Satterfield,* 572 F.2d at 693.

### 2. Violation of Due Process

■ Garroutte separately argues that exclusion of Snyder's statement violated his constitutional right to due process of law. He relies on *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Chambers,* the United States Supreme Court held that the due process clause was violated by mechanical application of a state law excluding statements against penal interest. The court reversed the defendant's conviction because he had been precluded from admitting an out-of-court statement that "afforded persuasive assurances of trustworthiness" and was "well within the basic rationale of the exception for declarations against interest." *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. The standards of admissibility prescribed by Evidence Rule 804(b)(3) parallel the constitutional mandate of *Chambers. United States v. MacDonald,* 688 F.2d at 232 n. 13. Our holding that Snyder's statement was not clearly corroborated therefore controls Garroutte's constitutional claim.

### DENIAL OF MOTION FOR NEW TRIAL

After conclusion of his trial, Garroutte moved for a new trial based on newly discovered evidence. He submitted an affidavit indicating that Snyder was no longer reluctant to be a witness and was willing to provide testimony exculpating Garroutte. Judge Buckalew denied Garroutte's motion. In refusing to grant a new trial, Judge Buckalew commented that Snyder's testimony was unlikely to change the outcome of Garroutte's case.

The standard applicable to motions for new trial based on newly discovered evidence was described by the supreme court in *Salinas v. State,* 373 P.2d 512, 514 (Alaska 1961):

> A motion for a new trial based on the ground of newly discovered evidence has to meet the following requirements: (1) It must appear from the motion that the

evidence relied on is, in fact, newly discovered, i.e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal.  [Footnote omitted.]

■ In this case, Snyder's belated willingness to testify does not amount to new evidence.  "When a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a co-defendant, evidence is not 'newly discovered.'"  *United States v. Diggs*, 649 F.2d 731, 740 (9th Cir.), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981).  Furthermore, in view of the lack of significant evidence to corroborate Snyder's statement and the strong possibility that the statement was motivated by Snyder's desire for revenge against Hayes, we find that Judge Buckalew did not abuse his discretion in concluding that an acquittal would be unlikely even if Snyder testified at a new trial.  *See United States v. Metz*, 652 F.2d 478, 480–81 (5th Cir.1981); *State v. Anderson*, 499 P.2d 169, 170–71 (Ariz. App.1972).

## ADMISSIBILITY OF EVIDENCE OF FIREARMS

Over Garroutte's objection, the state was permitted to present evidence that two loaded handguns were found under the seat of the pickup truck that Garroutte was driving on the night of the offense.  Garroutte argues that this evidence was irrelevant.  We disagree.

■ Garroutte's defense at trial was based on lack of knowledge.  Garroutte testified that he was unaware that the stolen cable was in the bed of the pickup truck.  According to Garroutte, Snyder had given him a ride in the truck shortly before it was stopped.  We believe that evidence concerning the presence and location of the two loaded guns that were found in the cab of the pickup tended to undercut Gar-

routte's defense by indicating that he was not simply a casual occupant of the truck.  The guns further support the state's theory that Snyder and Garroutte were using the truck to commit the theft.  While this evidence certainly does not conclusively establish a criminal purpose on the part of Snyder and Garroutte, under Alaska Rule of Evidence 401 the evidence need only have had a slight tendency to show the existence of a criminal purpose in order to be considered relevant.  *See Byrne v. State*, 654 P.2d 795, 795–96 (Alaska App. 1983); *Denison v. Anchorage*, 630 P.2d 1001, 1003 (Alaska App.1981).  Particularly in light of Garroutte's defense, we hold that the evidence of the guns was relevant and that Judge Buckalew did not abuse his discretion in admitting it.

## SENTENCING

Judge Buckalew found that Garroutte was subject to presumptive sentencing because of a 1972 conviction for receiving and concealing stolen property.  Former AS 11.20.350.  Although Garroutte had an extensive history of prior convictions, including numerous felonies, the 1972 conviction was the only felony within the seven-year limit applicable for purposes of triggering presumptive sentencing.  *See* AS 12.55.-145(a)(1).  Prior to sentencing, Garroutte objected to the use of his 1972 conviction for presumptive sentencing purposes.  He argued that since the statute under which he had been convicted of receiving and concealing stolen property did not require proof of value, the elements of that offense were not substantially identical to any felony under current Alaska law.  Thus, Garroutte contended that his 1972 conviction could not properly be deemed to be a prior felony conviction under AS 12.55.145(a)(2).  After hearing argument on the issue, Judge Buckalew found that the actual value of the stolen property involved in Garroutte's 1972 conviction exceeded $500, the jurisdictional minimum for felony theft under current law.  *See* AS 11.46.130(a)(1).  On this basis, Judge Buckalew concluded that Garroutte's 1972 felony qualified as a

prior conviction for presumptive sentencing purposes. Garroutte contends that this ruling was in error.

■ In *Lee v. State*, 673 P.2d 892, 895 (Alaska App.1983), we decided that, under AS 12.55.145(a)(2), a criminal conviction entered under prior Alaska law or under the law of another jurisdiction may be deemed to be a prior felony conviction for presumptive sentencing purposes only if the offense for which the prior conviction was entered had elements substantially identical to those of a felony under current Alaska law. *See also Wasson v. State*, 652 P.2d 117, 119 (Alaska App.1982). Since the elements of the receiving and concealing statute under which Garroutte was convicted in 1972 did not require proof of value, that offense differed substantially from current law and does not qualify as a prior felony conviction. Accordingly, Judge Buckalew erred in imposing a presumptive sentence based on Garroutte's 1972 conviction.

■ Although we conclude that Judge Buckalew improperly sentenced Garroutte to a presumptive term and that a remand for imposition of a non-presumptive sentence is necessary, we do not believe that a new sentencing hearing will be required upon remand. Garroutte has a lengthy history of misdemeanor and felony convictions. Although his felony convictions do not qualify to trigger presumptive sentencing, they are highly relevant to his sentence in this case and could properly be considered by the sentencing court. *See Lee v. State*, 673 P.2d at 895; *Peetook v. State*, 655 P.2d 1308, 1312 (Alaska App. 1982). Garroutte was subject to a maximum sentence of five years for this offense. In choosing to impose a four-year sentence, Judge Buckalew carefully considered the circumstances of the present case, as well as Garroutte's history of similar criminal misconduct. Judge Buckalew found that Garroutte was very close to being a worst offender. He further found that there appeared to be little prospect for

Garroutte's rehabilitation. We think these findings are supported by the record.

Judge Buckalew also gave careful consideration to all appropriate sentencing criteria. *See State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1971). It is evident from his sentencing remarks that Judge Buckalew believed the four-year term he imposed would be justified regardless of the requirements of presumptive sentencing. We are convinced that a remand for a new sentencing hearing would merely result in reimposition of a non-presumptive four-year term. Our consideration of the sentencing record further convinces us that Garroutte's four-year sentence was not clearly mistaken, except insofar as it was presumptively imposed. We thus conclude that the superior court should not be required to hold a full new sentencing hearing in this case. Instead, we believe that, on remand, the superior court should have the option of entering an amended judgment imposing a non-presumptive four-year term of imprisonment.[2] *See Tookak v. State*, 680 P.2d 509 (Alaska App.1984).

We AFFIRM the conviction and REMAND this case for entry of an amended judgment imposing a non-presumptive sentence.

**2.** Our decision does not preclude the superior court from exercising discretion to permit a full new sentencing hearing upon remand, should it deem such a hearing to be appropriate. Nor does our decision restrict Garroutte's right to seek reduction of his sentence pursuant to Criminal Rule 35(a).