Wesley MORTON, Appellant,

v.

STATE of Alaska, Appellee.

No. 7359.

Court of Appeals of Alaska.

July 20, 1984.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Wesley Morton was convicted by a jury of one count of second-degree assault, a class B felony, AS 11.41.210, and one count of third-degree assault, a class C felony, AS 11.41.220. Judge Ripley suspended imposition of sentence and placed Morton on probation for five years. Prior to trial, the state obtained a protective order prohibiting any testimony that James Morton, the defendant's brother, had admitted committing the assaults. Morton appeals the exclusion of evidence of his brother's statements that he, and not the defendant, was responsible for the crimes.[1] We affirm.

---

1. Morton's original point on appeal referred to matters subsequent to the trial. It stated that the trial court abused its discretion in denying Morton's motion to dismiss or, in the alterna- tive, for a new trial. Both motions were based on testimony by James Morton at a post-trial evidentiary hearing. The points on appeal were subsequently amended to provide:

On the evening of September 24, 1981, Wesley Morton and his brother James, arrived in Wesley's truck at a pawn shop in Wasilla. The glass door of the shop had been kicked in and two acquaintances of the Mortons were there picking up the glass. The man responsible for the damage had just left with John and Lenora Theriault, and was walking across a nearby parking lot. One of the men picking up the glass stated that the store had just been robbed and identified the three people in the parking lot as the perpetrators.

The Mortons then drove towards Lance Dilley, who was standing nearby. Dilley testified that Wesley Morton exited from the passenger side of the truck and struck him with a tire iron. The blow broke Dilley's elbow. The assault ceased abruptly when the attacker realized that Dilley was not one of the three people from the pawn shop. The attacker apologized and returned to the truck.

The Mortons then drove towards the three people they had observed walking away from the pawn shop. John Theriault testified that the same person who had struck Lance Dilley left the truck and swung a tire iron at him but missed. Theriault testified that the man was Wesley Morton.

An hour later, Wesley Morton was stopped by a state trooper for driving while intoxicated. John and Lenora Theriault were brought to the scene and asked if they could identify the man who had committed the assault. At that time, Wesley Morton was handcuffed and sitting in a patrol car. James Morton was also present. Both of the Theriaults identified Wesley Morton as the assailant. Wesley Morton was then charged with two counts of assault.

Shortly after the incident, James Morton allegedly told three people that it was he, and not Wesley, who committed the assaults.[2] James then left for Hawaii and did not return to testify at Wesley's trial.[3] The defense wished to introduce the testimony of the three people who had heard James Morton's confession. Claiming that the testimony was inadmissible hearsay, the state sought a protective order barring any testimony about James Morton's statements. Judge Ripley granted the order.

## DISCUSSION

Morton concedes that his brother's statements were hearsay. He argues that they were admissible under Evidence Rule 804(b)(3), which provides:

(b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule

---

The trial judge erred by denying defendant's Motion To Dismiss Or In The Alternative New Trial, made pursuant to Alaska Rules of Criminal Procedure 33 and 43(c) and based on evidence discovered subsequent to Mr. Morton's conviction.

It appears that this issue has been abandoned. The points on appeal were never amended to permit consideration of the argument discussed in the parties' briefs. Since the state has not objected to our consideration of the issue briefed by the parties, we will decide it.

2. At the evidentiary hearing on Wesley Morton's motion for a new trial or to dismiss, James Morton told an essentially exculpatory story. He denied assaulting John Theriault. He testified that after he was told that three men robbed the pawn shop, he and his brother gave chase when they ran away. He observed a fourth man who he believed was driving the robbers' getaway car. When James and Wesley approached this individual, later identified as Lance Dilley, to make a citizen's arrest, Dilley allegedly attacked both James and Wesley with-

out comment or provocation and attempted to strike them. Dilley missed Wesley, but struck James in the face, knocking him back. Frightened for his life, James returned to his truck, procured a tire iron and struck Dilley on the arm. He also obtained a second tire iron which he tossed to his brother Wesley. Dilley took the iron away from James and tried to choke him. It was only when James admitted his mistake that Dilley stopped beating him.

3. At the evidentiary hearing, James Morton denied that he went to Hawaii to escape prosecution for the assaults. He stated that he could not practice his trade of plumbing because of a drunk driving conviction which prevented him from driving a vehicle in Alaska. He said that he went to Hawaii so that he could work. He denied keeping his residence a secret and stated that he did not return to testify at trial because he was busy with his plumbing business and could not leave.

if the declarant is unavailable as a witness:

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Judge Ripley found that Wesley Morton had not established James Morton's unavailability, nor had he provided sufficient corroborating circumstances to clearly establish the trustworthiness of James Morton's statements. *See United States v. MacDonald,* 688 F.2d 224, 232–33 (4th Cir. 1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983).

We hold that Judge Ripley did not abuse his discretion in concluding that the record failed to establish James Morton's unavailability. Consequently, it is unnecessary for us to determine whether the hearsay statements were sufficiently corroborated by independent evidence to warrant their admission. *See Garroutte v. State,* 683 P.2d 262 (Alaska App.1984).

Shortly after the assaults in this case, James Morton left Alaska and went to Hawaii. To prove that James was unavailable, the defendant presented evidence of the efforts which had been made to locate him. An investigator with the public defender agency attempted to subpoena James Morton locally as soon as the office learned of the case, but he was already gone. James Morton, Sr., the defendant's father, received a collect call from James on November 18, 1981. The bill showed that the call had been made from Kona, Hawaii, from the telephone of a woman named Charlene Kantel. An investigator called Ms. Kantel and she told him that she was a friend of James, but that she had not seen him for approximately two months. She further stated that she believed he had gone to Maui, but that she did not know exactly where.

On December 31, 1981, Mr. Morton received a second collect call from James. Mr. Morton stated in an affidavit that he had contacted the telephone company, but they were unable to give him the number because the billing from Hawaii had not yet come through.

Judge Ripley held that the defendant had not shown due diligence in trying to locate James Morton. He noted that sixty days had elapsed between the November 18 telephone call and the trial. During that time the defense had made only one call to Charlene Kantel and had not followed that up. He indicated that the defendant should have at least attempted to obtain a subpoena in Hawaii and have it served on Kantel's residence. *See* AS 12.50.010–.080 (Uniform Act to Secure Attendance in Criminal Proceedings).[4] Hawaii has adopted this act. *See* HRS §§ 836–1 et seq.; *State v. Kim,* 519 P.2d 1241 (Hawaii 1974). We are satisfied that Judge Ripley did not abuse his discretion in making this finding. *Cf. Brooks v. State,* 371 A.2d 674, 677–79 (Md. App.1977) (defendant could not introduce testimony of out-of-state witness given at former trial absent showing that he had used provisions of uniform act and was nevertheless unable to secure witness's attendance). *See generally* Annot., 3 A.L.R. 4th 87, 105–06, 238–40 (1981). The defense knew that the witness may have been in Kona or in Maui, yet there was no attempt to check with the local police or to serve a subpoena on James Morton in either place. There is no indication that any check was

---

**4.** We recognize that some witnesses might be offended by service of a subpoena and that counsel might wish to exhaust the possibility of voluntary appearance before resorting to court process. That would not appear to have been a problem in this case. Had James Morton been subpoenaed as a witness pursuant to the act, he would have been exempt from arrest or criminal process for this offense while in Alaska. AS 12.50.030.

made with the post office in Wasilla, Kona or Maui for a forwarding address. *See Green v. State*, 579 P.2d 14, 18 (Alaska 1978). No attempt was made to· contact the plumbers union to see if James was working.

We recognize that the resources available to a defendant are not equal to those available to the state. We do not hold a defendant to the same high standard of showing due diligence that the state would have to meet in order to establish unavailability as a prerequisite to offering hearsay against a defendant in a criminal case. Nor are we suggesting that a defendant is under a duty to disclose his theory of the case, or possible witnesses supporting that theory, to the state in advance of trial. *See Scott v. State*, 519 P.2d 774 (Alaska 1974). Nevertheless, we believe that the defendant was required to do more than he did to establish due diligence. Nothing precludes the defense from seeking state assistance in finding an absent witness. Had Wesley contacted the prosecution or the court, and indicated a desire to find James in order to use his testimony at trial, and disclosed the information he had regarding James Morton's location, and the state had either refused to help or failed to find James, we might conclude that Wesley had done all that was necessary to find the absent witness. Because Wesley did not seek the state's assistance, and because he did not use the uniform act, we find that Judge Ripley did not abuse his discretion in concluding that Morton had not proved his brother's unavailability.

The decision of the superior court is AFFIRMED.