Harry E. LEWIS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–793.

Court of Appeals of Alaska.

Jan. 16, 1987.

Rehearings Denied Jan. 30 and
Feb. 5, 1987.

William F. Dewey, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.

James V. Gould, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Harold M. Brown, Juneau, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

Harry Lewis was convicted of murder in the first degree, an unclassified felony, AS 11.41.100(a), and sentenced to a maximum ninety-nine year term of imprisonment. AS 12.55.125(a). Lewis appeals his conviction and sentence. We affirm.

The facts of the offense are set out in *Riley v. State*, 720 P.2d 951 (Alaska App. 1986):

> [Tamara Lynn] Riley and two other individuals, Ricky Eason and Harry Lewis, were convicted for the murder of Riley's husband, Leon Riley, Jr. The evidence at Riley's trial indicated that, in February 1984, Riley became employed as a dancer at P.J.'s, an Anchorage nightclub. There, she met Eason and Lewis. Riley became romantically involved with Eason. Apparently desiring to pursue her affair with Eason without interference from her husband, and wanting also to collect on her husband's $35,000 life insurance policy, Riley plotted with Eason and Lewis to kill Leon Riley. Pursuant to their plan, on March 7, 1984, she invited Leon Riley to P.J.'s to see her dance. She later called Leon Riley from P.J.'s and told him that Eason would pick him up and give him a ride to the club. After making the call, Riley informed Eason and Lewis that everything was set. Eason and Lewis drove in Lewis' van to the Rileys' apartment, and Lewis hid in the back of the van when Leon Riley got in. As Eason drove back toward P.J.'s, Lewis grabbed Riley by the throat from behind and strangled him. After disposing of the body, Eason

and Lewis returned to P.J.'s and informed Riley that her husband was dead.

Lewis first argues that the trial court erred in failing to suppress a statement he made to an investigating officer, allegedly in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The record reflects that Lewis went to the police station apparently to inquire about his van which had been seized as evidence. While there, he was given proper *Miranda* warnings and interrogated by Sergeant James Jansen. In the course of his conversations with Sergeant Jansen, he asked if Jansen thought he (Lewis) "could get an attorney tonight," apparently in reference to the *Miranda* warnings previously given. Sergeant Jansen did not specifically answer this question but inquired again whether Lewis wanted an attorney. Apparently Lewis gave unresponsive answers. Sergeant Jansen continued to ask Lewis if he wanted an attorney, and then generally asked Lewis if he wanted to talk about the case. Lewis apparently did and made a number of admissions. Lewis' statement was ultimately recorded by Officer Maxine Farrell, the chief investigating officer on the case. These admissions were used against Lewis at trial.

Lewis argues that his question about getting an attorney tonight was an unambiguous request for counsel that precluded further questioning. *See Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *Giacomazzi v. State*, 633 P.2d 218, 221–22 (Alaska 1981); *Hampel v. State*, 706 P.2d 1173 (Alaska App.1985). The state responds that Lewis had already waived his *Miranda* rights and signed a written waiver at the time he made an ambiguous inquiry about the immediate availability of counsel. It also contends that the officer attempted to clarify the ambiguity by repeatedly questioning Lewis about his desires regarding counsel, questions to which Lewis gave nonresponsive answers. In the state's view, Lewis' nonresponsiveness, coupled

with his affirmative response regarding whether he wished to talk about the case, constituted an implicit ratification of his earlier *Miranda* waivers, rendering his subsequent statements admissible.

■ We find it unnecessary to decide either this complicated question, or the related question of whether failure to record a part of Lewis' conversation with the police tainted the recorded part (*see Stephan v. State*, 711 P.2d 1156 (Alaska 1985)) because we are satisfied that any error in subsequently admitting Lewis' admissions was harmless beyond a reasonable doubt. The general rule is stated in *People v. Auilar*, 59 Ill.2d 95, 319 N.E.2d 514 (1974), where the court said:

> Though courts have not been unanimous in their reasoning it generally has been held that if a defendant takes the witness stand and admits in substance matters contained in a confession or statement he has given the police, this testimony will be considered to have waived or made harmless any error that may have occurred in the admission of the confession or statement.

319 N.E.2d at 516–17 (citations omitted). We are satisfied that this rule is operable here.

Lewis' counsel indicated in opening statement that Lewis would testify; this was prior to the admission of Lewis' confessions. Lewis' testimony corroborated, rather than contradicted, the statements he had previously given. In fact, Lewis concedes in his reply brief that his testimony largely duplicated his theory of the case propounded to the police, and that he testified merely to subject himself to cross-examination to bolster his credibility. We recognize that Lewis' testimony at trial would not cure any error in admitting his pre-trial statements if his trial testimony was in any sense compelled because of the admission of those statements. *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). However, Lewis made no such claim in the court below and such a claim does not appear from the record.

In *Harrison*, the defendant indicated in his opening statement that he would not testify and only changed his mind after his confessions were admitted against him. Harrison's testimony directly contradicted the confessions. In contrast, Lewis indicated in his opening statement that he would testify prior to the admission of the confessions, and he had substantial independent reasons for doing so. At the time of his opening statement, he knew that his two codefendants had substantially implicated him in their confessions. He did not know whether they would testify, although, as a matter of fact, both subsequently invoked their fifth amendment right and refused to testify. While he was certainly free to reevaluate his decision to testify at this time, he might have feared that the jury would hold his original promise to testify against him even if the judge had instructed the jury not to draw adverse inferences from his decision not to testify.

In further contrast, Lewis was faced with an admission to his friend, Charles Little, that he had "killed someone" on the night in question. Under the circumstances, Lewis might well have concluded that testifying was the only way he could get his version of the facts in evidence, *i.e.*, that Rick Eason, and not Harry Lewis, killed the decedent. Assuming *arguendo* that Lewis' tape-recorded statements were obtained in violation of his *Miranda* rights, his subsequent testimony cured any error beyond a reasonable doubt. *See United States v. Bayer*, 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947); *Hampton v. State*, 569 P.2d 138, 144–45 (Alaska 1977). *See also Darwin v. Connecticut*, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968) (Harlan, J., concurring).

As in *Bayer*, we are satisfied that the amount of time which elapsed between Lewis' statements to the police and his subsequent decision to testify, coupled with his having the benefit of counsel's advice, serves to rebut as a matter of law any presumption that his testimony was the product of his earlier statements and satisfied the state's burden to establish that

Lewis' trial testimony was not compelled by his earlier statements to the police.[1] This conclusion makes it unnecessary for us to evaluate the implications of *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), in which the Supreme Court rejected the "cat out of the bag" analysis of subsequent statements.

Lewis next argues the trial court erred in allowing the state to recall him over defense objection as part of its rebuttal case. The record reflects that Lewis elected to testify at trial and was vigorously cross-examined by the prosecution. He told essentially the same story as in his confession to the police, *i.e.*, that he had attacked and attempted to strangle Leon Riley, but desisted while Riley was still alive and thereafter Rick Eason killed him. Following Lewis' testimony, the defense called two more witnesses, and rested its case. When the state was asked if it planned to present rebuttal, it informed the court that it had intercepted a letter from Lewis to codefendant Rick Eason in which Lewis discussed how the two could "get their stories straight" and both testify so as to raise the issue of self-defense at trial. Lewis objected to the state recalling him in order to introduce the letter, initially because he contended evidence of the letter was more prejudicial than probative, and later because he objected to being recalled after cross-examination was finished. The court allowed Lewis to be recalled, agreeing with the prosecution that the recall was based on newly discovered evidence that went directly to the defendant's credibility, since the letter dealt with fabricating testimony.

■ Lewis argues on appeal that recalling him as a rebuttal witness violated his constitutional right against self-incrimination. *See State v. Gilbert*, 262 N.W.2d 334, 340 (Minn.1977). In contrast, the state argues that Lewis was not called as a rebuttal witness. Rather, the state claims that the recall constituted a continuation of cross-examination, and that permitting Lewis' testimony was within the trial court's discretion in exercising its control over the mode and order of interrogating witnesses and presenting evidence. *See* A.R.E. 611(a).

We agree with the state. Having taken the stand as a witness, Lewis was subject to impeachment like any other witness. Inquiry of Lewis concerning the letter would have been proper cross-examination while Lewis was on the stand as it concerned the same subjects opened up on direct examination and went directly to his credibility as a witness. We find no error. *See Johnson v. United States*, 207 F.2d 314, 322 (5th Cir.1953) *cert. denied*, 347 U.S. 938, 74 S.Ct. 632, 98 L.Ed. 1087 (1954). *See also* 8 J. Wigmore, *Evidence* § 2276 at 470 (McNaughton rev. ed. 1961) (accused taking stand is subject to usual stages of inquiry; defendant may be recalled for further cross-examination under same conditions as ordinary witness).

■ Lewis next argues that the trial court erred in permitting expert testimony regarding the legend of the Ninja assassins to prejudice him in the eyes of the jury. At trial, Investigator Cox, who testified he was an expert in martial arts practice, explained his understanding of the Ninjas as hired assassins, who dressed in black, hooded costumes. The state offered this evidence, coupled with evidence that Lewis wore a similar costume on the night of the homicide, to show Lewis' state of mind, *i.e.*, that he perceived himself as a hired assassin. Lewis objected on the ground of foundation, contending that the evidence would be irrelevant and inflammatory unless a proper foundation was established relating this evidence to facts at issue in Lewis' case.

On appeal, Lewis argues for the first time that this testimony violated A.R.E. 404(b). Since he did not make this argument in the trial court, we must consider it

---

1. Lewis argues that the interplay between his prior confession and his subsequent testimony is a question of fact which the trial court should determine at an evidentiary hearing on remand.

We disagree, noting that in *Bayer*, for similar reasons, the issue was resolved without a remand.

under the plain error rule. Alaska R. Crim.P. 47(b). As such, we find no plain error. The evidence was clearly relevant to explain Lewis' unusual attire and to establish his state of mind and intentions on the night of the murder.

■ Lewis also argues that the trial court committed reversible error when it precluded him from calling a fellow inmate, Gordon David, to testify regarding a conversation that he overheard between Lewis and codefendant Eason. In particular David would testify that he heard Eason admit that he (Eason) and not Lewis actually killed Leon Riley. Lewis relies on Alaska Evidence Rule 804(b)(3), which provides:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true [is admissible as an exception to the hearsay rule]. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Lewis' theory of the case was that he attacked the victim and strangled him, but did not kill him. Eason then finished the job using a cord by garroting Riley. In Lewis' view, the testimony of Dr. Probst, the pathologist, corroborated this theory by testifying that the decedent's throat bore two different kinds of marks which could be explained by two different assailants. Lewis relies upon *Gutierrez v. State*, 673 P.2d 287, 289 (Alaska App.1983) to support his contention that David's testimony was admissible under A.R.E. 804.

While we agree with Lewis that Eason, a codefendant, who could be expected to invoke his fifth amendment rights was "unavailable," *Gutierrez*, 673 P.2d at 289, we are satisfied that the trial court did not abuse its discretion in rejecting the proffered evidence. *See Garroutte v. State*,

683 P.2d 262, 265–67 (Alaska App. 1984); *cf. Larson v. State*, 656 P.2d 571, 574 (Alaska App.1982) (considering a related issue). Viewing the totality of the circumstances and particularly the efforts by Lewis to manufacture a defense with Eason, the trial court could well conclude that the statements attributed to Eason did not bear sufficient *indicia* of trustworthiness to warrant admissibility. The court could further find that the statements, in the context in which they were made, *i.e.*, by one codefendant to another, were not declarations against penal interest. For these same reasons, we conclude that exclusion of David's proposed testimony did not violate Lewis' constitutional right to due process. *Garroutte*, 683 P.2d at 267; *Larson*, 656 P.2d at 575.

■ Additionally, Lewis argues that the state was permitted to introduce hearsay through certain police witnesses. The facts established in this way were largely cumulative of Lewis' testimony. We are satisfied that any error was harmless beyond a reasonable doubt in light of Lewis' testimony at trial.

■ Finally, Lewis appeals his sentence as being excessive. Lewis was sentenced to ninety-nine years in prison, the maximum sentence for first-degree murder. AS 12.55.125(a). A maximum prison sentence is generally reserved for a worst offender. *Hintz v. State*, 627 P.2d 207, 210 (Alaska 1981). Lewis was a first felony offender with no criminal record, a good military and employment record, and no discernible alcohol or drug problems. He argues that he could not be classified as a worst offender. *See State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975).

We are satisfied that the trial court was not clearly mistaken in imposing a maximum ninety-nine year sentence. *See Riley v. State*, 720 P.2d 951 (Alaska App.1986) (approving the ninety-nine year sentence received by Lewis' eighteen-year-old codefendant). In the present case, the trial court determined that Lewis had agreed to kill Riley, a stranger to him, for money,

that he had carefully prepared for it, and that his actions were the worst kind of homicide: a willful, cold-blooded, contract killing. Under the circumstances, the trial court was justified in finding Lewis a worst offender based only on the nature of his offense. *See Cassell v. State*, 645 P.2d 219, 224 (Alaska App.1982) (affirming sentence of life imprisonment for a nineteen-year-old with a relatively good background who contracted for the killing of a third party); *Hoover v. State*, 641 P.2d 1263, 1264 (Alaska App.1982).

The judgment of the superior court is AFFIRMED.