UNITED STATES, Appellee,

v.

Private (E–2) Eugene A. BELFIELD
350–62–1899, United States
Army, Appellant.

CM 445104.

U.S. Army Court of Military Review.

8 April 1987.

For Appellee: Captain Brian R. St. James, JAGC (argued); Lieutenant Colonel Paul J. Luedtke, JAGC, Major Dale K. Marvin, JAGC (on brief).

For Appellee: Captain Mark E. Frye, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Denise K. Vowell, JAGC (on brief).

Before FELDER, RICHARDSON, and ROBBLEE, Appellate Military Judges.

OPINION OF THE COURT
ON REMAND

FELDER, Senior Judge:

Contrary to his pleas at a general court-martial, the officer members convicted appellant of rape, in violation of Article 120, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. § 920 (1982). His approved sentence extends to a bad-conduct discharge, confinement for two years, total forfeitures, and reduction to Private E–1. Upon initial review this court affirmed the findings of guilty and the sentence. *United States v. Belfield*, CM 445104 (A.C.M.R. 13 Sep. 1985). On 24 July 1986, 22 M.J. 414, the United States Court of Military Appeals remanded the case to this court for further review in light of *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) and *United States v. Cordero*, 22 M.J. 216 (C.M.A. 1986). The remand directed our consideration of the following issues:

I

THE CONVENING AUTHORITY ERRED BY REFUSING TO GIVE APPELLANT A NEW TRIAL BECAUSE THE TESTIMONY OF A CO–ACCUSED AT HIS OWN TRIAL WAS NEWLY DISCOVERED EVIDENCE WHICH WOULD PROBABLY CHANGE THE RESULT OF A SECOND TRIAL.

II

THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE THE STATEMENT OF A CO–ACCUSED THEREBY DENYING APPELLANT AN OPPORTUNITY TO CONFRONT AND CROSS–EXAMINE THE WITNESSES AGAINST HIM.

*Denial of Petition for Rehearing*

With regard to the first issue on remand, we conclude the convening author-

ity did not err by denying the appellant's petition for a rehearing premised on newly discovered evidence. Private (PVT) P was separately tried for his involvement in the incident which led to appellant's conviction. The testimony of PVT P at his own trial was decidedly self-serving with respect to his own actions. However, the facts he related concerning appellant's involvement were consistent with the testimony of the victim and the eyewitness who testified at appellant's trial.

At his trial PVT P testified that appellant was initially positioned between the victim's legs and was subsequently lying on top of her. His testimony indicates that the victim's pants and underwear were pulled down by either appellant or the other co-accuseds involved in the group encounter. According to PVT P, appellant was aggressive and it appeared that he was having intercourse or trying to have sex with the victim when appellant was lying on top of her. PVT P further testified that while he believed the victim was willing to have intercourse with him at the time, and possibly with others subsequently, he did not believe the victim wanted to have sex with appellant.

On the basis of the entire record we are satisfied that the testimony of PVT P at his own trial would probably not have caused a different result if it had been offered at appellant's court-martial. Nothing new was presented at PVT P's trial; the same factual scenario was established. Significantly, the testimony of PVT P corroborated the testimony of the victim that she did not consent to sex with appellant. Viewed as a whole, the testimony in question was largely cumulative with the evidence adduced at appellant's trial. Moreover, none of PVT P's testimony possessed any additional impeachment value from appellant's perspective. *See United States v. Thomas,* 11 M.J. 135, 138 (C.M.A.1981), *quoting Mesarosh v. United States,* 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956) ("new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial"); *United States v. Chadd,* 32 C.M.R. 438 (C.M.A.1963); *United States v. Petersen,* 7 M.J. 981 (A.C.M.R.), *petition denied,* 8 M.J. 174 (C.M.A.1979); Article 73, UCMJ, 10 U.S.C. § 873.

### The Confrontation Clause

■ Appellant and four other male soldiers were involved in the incident with PVT H. After PVT H made a formal complaint to criminal investigators, Private First Class (PFC) Harmes was interviewed. Specialist Four (SP4) Wood was then questioned by Agent Derrico, who fully advised him of his rights.[1] Agent Derrico informed SP4 Wood that PFC Harmes and PVT H had already given statements concerning the incident. Agent Derrico did not mention appellant's name as a person allegedly involved in the incident. SP4 Wood waived his rights and rendered a sworn statement which incriminated himself and appellant in the rape of PVT H.[2]

The statement by SP4 Wood was largely consistent with the complaint made by the victim and the statement given by the eyewitness, PFC Harmes. Of particular importance, however, are certain additional facts that appear in SP4 Wood's statement. SP4 Wood stated that appellant's zipper was unfastened and that appellant's erect penis was exposed immediately before appellant assumed a horizontal position over PVT H. SP4 Wood explained that he assumed appellant had accomplished pen-

---

1. *See* Article 31, UCMJ, 10 U.S.C. § 831.

2. While such a statement is categorized as a declaration against penal interest for hearsay purposes (*see* Manual for Courts-Martial, United States, 1984, Mil.R.Evid. 804(b)(3)), the Supreme Court has rejected this categorization as overbroad for Confrontation Clause purposes. Accordingly, we likewise "decide this case as involving a confession by an accomplice which incriminates a criminal defendant." *Lee v. Illinois,* 106 S.Ct. at 2065 n. 5. However, since appellant denied any criminal activity, we are not dealing with interlocking confessions. *See Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979).

etration because appellant later voiced the need "to go up and wash his [penis]."

SP4 Wood did not testify at appellant's trial. It was established that, if called, SP4 Wood would refuse to testify because he was pending trial for his participation in the same incident.[3] As a result, the government successfully moved, over defense objection, to admit SP4 Wood's sworn statement pursuant to Mil.R.Evid. 804(b)(3).

The critical question at this juncture is whether SP4 Wood's extrajudicial statement possessed sufficient indicia of reliability so as to permit its admission into evidence despite the lack of face-to-face confrontation at the trial. *See Lee v. Illinois; United States v. Cordero.* The Court of Military Appeals has recently encapsulated the relevant considerations.

> [I]n order for out-of-court statements to be admissible under the Confrontation Clause, it is preferable for face-to-face confrontation to occur at trial. Failing that, it is essential that the statements bear "indicia of reliability" such that "there is no material departure from the reason of the general rule."

*United States v. Hines,* 23 M.J. 125, 131 (C.M.A.1986). *See also Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

The government relies on *United States v. Robinson,* 16 M.J. 766 (A.C.M.R.1983), for the proposition that SP4 Wood's statement possessed "intrinsic indicia of trustworthiness" in that it was written, sworn, and voluntary. To be sure, these are important considerations, but a more particularized showing is required for constitutional purposes. There must be an independent showing of the trustworthiness[4] of the specific allegations against appellant. 16 M.J. at 768. A showing that establishes

traditional voluntariness is simply not enough to demonstrate "trustworthiness."

The admissibility of SP4 Wood's statement was litigated at the end of the government's case-in-chief. As a result, the military judge had before him all the evidence that could have independently demonstrated or contradicted the trustworthiness of SP4 Wood's statement. Additionally, Agent Derrico testified concerning his observations of SP4 Wood's demeanor during the giving of the statement. After hearing all this evidence, the military judge ruled, in pertinent part, as follows:

> Based on everything I have heard in this case, especially the way in which Wood's statement corroborates that of the victim, that—in certain aspects the admissions of the accused, and the end result of what we eventually got out of Harmes, the circumstances under which he was questioned, his contriteness, his cooperativeness, the fact that he just came out and said, 'This is what happened.' ... I am totally convinced that Wood was telling it the way he remembered it happened and he wasn't trying to slant it one way or the other ... I am very convinced that, in fact, the circumstances indicate the trustworthiness of his statement.

Due to the specificity of the findings made, we need not speculate as to the "factors which impressed the trial judge as being quite weighty." *United States v. Hines,* 23 M.J. at 135. It is abundantly clear that the military judge determined there was sufficient independent evidence (corroboration) to establish the trustworthiness of the factual matters contained in SP4 Wood's statement. Based on our review of the record, we agree with his findings.

Absent from this case is any evidentiary suggestion that SP4 Wood's statement was the product of an investigative technique

---

3. We are satisfied that the military judge correctly determined SP4 Wood to be "unavailable" within the meaning of Mil.R.Evid. 804(a)(1). *See United States v. Vega-Cancel,* 19 M.J. 899 (A.C.M.R.1985), *United States v. Robinson,* 16 M.J. 766 (A.C.M.R.1983).

4. While the hearsay rule and the Confrontation Clause are not coextensive, they embrace similar concerns. For our purposes we find no substantive distinction between the hearsay requirement of trustworthiness and the constitutional requirement of indicia of reliability. *Cf. United States v. Hines,* 23 M.J. at 134.

as was found to be the case in *Cordero*. To the contrary, the record establishes that the investigator did not suggest a theory of how the incident might have taken place. Rather, SP4 Wood made his statement "right off the top." Consequently, we are convinced that this is not a case in which "the statement obtained is in some respects the product of the investigator, rather than of the purported declarant." 22 M.J. at 222.[5]

Also absent from this case is the appearance that SP4 Wood was trying to minimize his culpability at appellant's expense. Appellant had not been interviewed when SP4 Wood made his statement to Agent Derrico. Appellant's name had not been mentioned by the agent during his preliminary discussion with SP4 Wood. Significantly, despite his knowledge that PFC Harmes had already given a statement to the investigator, SP4 Wood exonerated PFC Harmes of any wrongdoing. There simply is nothing to suggest that SP4 Wood had any motive "to mitigate the appearance of his own culpability by spreading the blame or to overstate [appellant's] involvement in retaliation for [appellant's] having implicated him." 106 S.Ct. at 2064.[6]

One further matter requires clarification. A cursory reading of *Lee* and *Hines* may lead to the perception that an accomplice's confession must necessarily be corroborated by an accused's confession in every material respect. We do not read either case so broadly. A closer examination of both cases reflects that it is only when the accomplice's confession is claimed to be trustworthy solely because it "interlocks" with the accused's confession that the Confrontation Clause requires fact-specific cor-

roboration between the two statements. *See* 106 S.Ct. at 2064–65; 23 M.J. at 137–38.

In this case there are abundant indicia of the reliability of SP4 Wood's statement without regard to appellant's statement to the investigator. Based on the entire record, we find no material departure from the reason for the general rule of face-to-face confrontation. Therefore, the statement of SP4 Wood was properly admitted at appellant's trial.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge RICHARDSON and Judge ROBBLEE concur.

---

5. During oral argument appellant urged that any statement made to a law enforcement officer is inherently, in some respects, the product of the investigator. While we reject such a *per se* rule, and find to the contrary in this case, we are mindful of the potential utility of "some basis for determining to what extent the statement contains the investigator's input." 22 M.J. at 222. As a practical matter, the agent may not always be available to testify as was done in this case. The mere passage of time may lead to loss of precise memory. Therefore, where feasi-

ble, it would be extremely valuable for investigators to videotape or otherwise record an interview with a suspect. Such a procedure would unquestionably promote the cause of justice and would minimize unnecessary litigation.

6. Had such a motive existed, PFC Harmes was the most likely, if not the only, recipient. This practical reality is implicit in the finding of the military judge that SP4 Wood "wasn't trying to slant it one way or the other."