UNITED STATES

v.

**Sergeant John N. FISHER, FR 117–58–5838, United States Air Force.**

**ACM S27795.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 March 1988.

Decided 3 March 1989.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi; Major Mark R. Bell and Major Charles E. Ambrose, Jr., USAFR.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel

---

Robert E. Giovagnoni and Major Jeffrey H. Curtis.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

KASTL, Senior Judge:

In *United States v. Melvin,* 26 M.J. 145 (C.M.A.1988), the Court of Military Appeals illuminated the degree of independent evidence needed to corroborate an accused's confession. No mathematical formula was possible, Judge Sullivan explained, but the amount of corroboration generally required by Federal courts was not great; consequently, the "amount needed in military courts may be very slight." *Id.* at 146. Today, we examine a case where there is insufficient admissible independent corroboration to sustain a conviction.

### Factual Setting

Sergeant Fisher was convicted of wrongful use of cocaine on two occasions. He was tried by a military judge sitting alone as a special court-martial and found guilty. His sentence was a bad conduct discharge, confinement for four months, and reduction to airman basic.

The case began when, following up a lead that Sergeant Fisher was a drug abuser, agents of the Office of Special Investigations (OSI) interviewed the appellant. Informed of his rights, he agreed to speak; eventually, he confessed to using cocaine twice, once while playing cards and once after a wedding reception. At his court-martial, the prosecution offered the written, sworn statement of Senior Airman Foley as corroboration of the appellant's confession, along with two other documents: (a) Foley's handwritten statement, which preceded his typed statement by a matter of moments; and (b) a suicide letter written by Foley about one month later, just before he killed himself.

Foley's sworn statement asserts that the appellant, his wife, and several others used cocaine at both the appellant's house and at a reception. The statement does not implicate Foley himself in any active wrongdoing. The rambling suicide note does not mention the appellant but does refer to the appellant's wife in bitter and negative terms. In the suicide note, Foley sought to explain his reasons for ending his life. He wrote that he had "dishonored" the United States and went on to say that: "Society has taken a stand against drugs & drug users. This stand is unfair. I have made a mistake wich [sic] I will never be rid of...."

The prosecution's theory for admissibility was twofold. Foley's statement was proffered as a declaration against penal interest under Military Rules of Evidence 804(b)(3). As a fallback proposition, its admissibility was urged under the residual hearsay exception, Mil.R.Evid. 804(b)(5). The defense objected to both rationales.

Special Agent Gillen testified; he explained that Foley was unavailable because he had committed suicide six weeks before. Agent Gillen also pointed out a factor which will be crucial to our analysis of the case—it was only *after* Foley had signed his statement inculpating the appellant that Foley revealed his own contemporaneous cocaine use:

> After he [Foley] provided me the statement here, I then told him that I suspected that he also was involved in the use of cocaine during both of these incidents, at which time I told him that if he told me that he was involved in this, it could be used against him. I then advised him of his rights. After advising him of his rights, he then told me that he understood his rights, he declined legal counsel, and he made an oral statement that, *yes, he had in fact used cocaine on both of those occasions.*

(Emphasis added).

It is because the military judge admitted Foley's non-inculpatory statements as corroboration that the appellant seeks relief. In his special findings on the issue, the military judge essentially noted as follows: (1) Foley was dead and thus obviously unavailable; (2) Foley's statement was self-incriminatory since any reasonable person would fear the dangers of false accusation and prosecution; (3) Foley was aware of illicit drug use; (4) Foley's suicide note had "considerable indicia of truthfulness and

reliability about it" since it was made in contemplation of his destroying himself; and (5) Foley's written statement was witnessed and under oath. It followed that there were sufficient indicia of reliability, according to the military judge.

### Declarations Against Penal Interest

■ We find the non-inculpatory statements inadmissible under Rule 804(b)(3) because they were not against the declarant's penal interest when made. It is crucial to note the chronology in this case: At the time Foley made his written statement and signed and swore to the typed statement, he had revealed nothing to implicate himself in wrongdoing. Thus far, he was a "snitch" but not a coactor; it follows that his statements to the OSI were not against his penal interest at the time they were made. *See United States v. Dill,* 24 M.J. 386, 387–388 and n. 4 (C.M.A.1987); *Roberts v. City of Troy,* 773 F.2d 720, 725–726 (6th Cir.1985); *United States v. Riley,* 657 F.2d 1377, 1383 (8th Cir.1981) (excellent gathering of precedents). *See also* V. Wigmore on Evidence 342 (Chadborn Rev.1974) and Salzburg and Redden, Federal Rules of Evidence Manual 955–959 (1986).

What is missing here is the declarant speaking in such a fashion as to subject himself to any tangible liability; such is the standard required in reported cases. *United States v. Hoyos,* 573 F.2d 1111, 1115 (9th Cir.1978); *State v. Standifur,* 310 Md. 3, 526 A.2d 955 (Md.1987) (thorough discussion of declarations against penal interest, beginning with 1844 English authority; analyzes Maryland rule which parallels Federal Rule of Evidence). *See generally* Annot., 34 A.L.R.Fed. 412 (1977) and Annot., 92 A.L.R.3d 1164 (1979).

Seeking to show that Foley indeed subjected himself to criminal responsibility, appellate government counsel renews an argument made at trial based upon Air Force Regulation 30–2, *Social Actions Program* (18 April 1986): The Government claims that AFR 30–2 mandates at paragraph 2–17c that all military members report known or suspected incidents of illegal drug abuse; this being the case, the Government argument runs, Foley had an obligation to report illicit drug use. His decision not to act is said to satisfy the requirement that the statement be against Foley's penal interest.

We are unpersuaded. In the first place, Foley was involved as a cocaine user. We doubt that he could be convicted for failing to report drug abuse of his peers since he would inevitably involve himself while inculpating them. *See United States v. Heyward,* 22 M.J. 35, 38 (C.M.A.1986). Moreover, on the question of whether Foley's statement was an admission against interest, we find instructive *Pfeil v. Rogers,* 757 F.2d 850, 860–861 (7th Cir.1985). There, the issue was whether the statement of a woman who had witnessed a murder was admissible under Rule 804(b)(3). The prosecution contended that failure to disclose a murder constituted obstructing justice under the applicable Wisconsin statute, thereby making the woman's statement a clearcut declaration against her penal interest and thus admissible. Refusing to so hold, the court reasoned that concealing a murder involves *inactivity,* not affirmative action. Such inactivity was insufficient to make the statement one against her penal interest; hence, it was inadmissible.

As already emphasized, when Foley first signed a statement which inculpated others he did not address his own involvement; only later did he make an oral statement conceding his own use of cocaine at the same time as the appellant. Given this scenario, can Foley's later oral statement fairly be said to refer back to his earlier written statement, dovetailing to form one combined declaration against interest? We do not believe so. We have found no case —and none has been cited to us—which goes so far. The precedents appear to require the statement to be against the speaker's interest *when it was made. See generally* Saltzburg, Schinasi & Schlueter, Military Rules of Evidence Manual 681–682 (2d ed.1986).

Furthermore, even if we were to view Foley's oral and written statements as a unified package, we would not find the resulting declaration persuasive against appellant. Statements implicating others

which are obtained during police interrogations are inherently suspect since the declarant could well be seeking to curry favor with law enforcement officials. *See United States v. Boyce,* 849 F.2d 833 (3d Cir. 1988); *United States v. Sarmiento–Perez,* 633 F.2d 1092, 1102–1103 (5th Cir.1981); and *United States v. Turner,* 475 F.Supp. 194 (E.D.Mich.1978). *See generally United States v. Guaglione,* 27 M.J. 268, 274 (C.M.A.1988) (residual hearsay case under M.R.Evid. 803(24) but indicating concern over statements given to criminal investigators since they inevitably are "seeking to build a case to prove guilt").

Our analysis does not stop there. The confrontation clause engrafts onto Mil.R. Evid. 804(b)(3) a constitutional requirement that statements which implicate an accused must be trustworthy. *United States v. Robinson,* 16 M.J. 766, 768 (A.C. M.R.1983) and cases cited therein. Various factors which have troubled appellate courts in weighing whether a given statement is trustworthy exist here. Such matters include:

1. What was the length of time between the event and the informant's declaration? *See United States v. Satterfield,* 572 F.2d 687, 693 (9th Cir.1978). Here, the elapsed time was about 24 months from the first use of cocaine and about four months from the second.

2. Was there animosity between the parties? *Ibid.* Here, Foley's suicide note reflects loathing of appellant's wife, stating that he would "curse her for my eternal life in Hell."

3. Was there a possible motive to lie such as revenge or antagonism? *Sarmiento–Perez,* 633 F.2d at 1102. Again, the rancor Foley felt against Mrs. Fisher is reflected in his suicide note.

4. Were there *Miranda* warnings given before the first statement? *See* Weinstein's Evidence Sec. 804(b)(3)[03]. Here, the OSI first gathered data against others; only then was Foley warned.

5. How reliable was the speaker? *United States v. Rasmussen,* 790 F.2d 55 (8th Cir.1986). Foley later committed suicide.

As to the matter of suicide, the Government asserts that Foley's taking his own life lends credibility to his observations and statements concerning drugs. The contrary argument is surely at least equally persuasive. At common law, suicide was held to be wicked because it involved self-murder. It was a felony punishable by forfeiture of goods and burial of the suicide's body on the highway. *See* 83 C.J.S. *Suicide* Sec. 1–2 (1953). Suicide can demonstrate a guilty conscience over bringing charges. *See United States v. Lara–Hernandez,* 588 F.2d 272, 274 (9th Cir.1978). Suicide attempts can be a factor weighing against credibility. *See United States v. Campo,* 414 F.2d 765 (2d Cir.1969) and *United States v. Turner, supra,* at 194 (co-defendant a suicide prior to trial). Something of the military attitude towards suicide is contained in Air Force Regulation 35–67, *Line of Duty* (1 March 1988), at paragraph 5–13a, which states that in view of the human instinct for self-preservation, suicide "gives rise to a strong inference of lack of mental responsibility." Based on these considerations, we are unpersuaded that the suicide of the unfortunate Foley can salvage an otherwise unreliable statement.

## Residual Hearsay

The alternate ground for admitting the statement is Rule 804(b)(5), the residual hearsay exception. Appellate courts have constantly held that this Rule is to be construed strictly and used in rare, exceptional circumstances. *See United States v. Yeauger,* 27 M.J. 199, 202–203 (C.M.A. 1988) and Saltzburg, Schinasi & Schlueter, *supra* at 682–683. Under Mil.R.Evid. 804(b)(5), one of the necessary predicates for admitting a proposed statement is that it is more probative on the point than any other evidence which the Government can procure through reasonable efforts. *See United States v. Dill,* 24 M.J. 386, 387–388 (C.M.A.1987). Here, the Government failed to exhaust every reasonable means to secure the preferable live testimony of other witnesses before utilizing an out-of-court declaration. *See United States v. Hines,* 23 M.J. 125, 133 (C.M.A.1986).

We do not wish to advise the prosecution how to try its case. However, we are compelled to conclude that the Government did not demonstrate on the record that Foley's statement was the best evidence available. As we read the record, there were other witnesses clearly available to the prosecution. The Government representated at trial that another military member, Staff Sergeant Dale Ferguson of Mather Air Force Base, California, would stand on his Article 31, 10 U.S.C. § 831 rights. However, this representation does not explain why the Government failed to grant Ferguson immunity. A second witness, Sergeant Joseph Pernick, was allegedly present when cocaine was used. Pernick eventually testified for the defense in the case. His statement implicates the accused and seemingly provides all the corroboration needed to second the appellant's confession. Nevertheless, for reasons unclear to us, the prosecution used the document solely to impeach Pernick. Defense counsel stated that he would not object to the document "with the stipulation that it's offered only for the purposes of impeaching the witness." The military judge then admitted the document "for that purpose only."

In addition, the appellant's wife made a statement to OSI investigators which—to our minds—tends to support in a vague way an allegation of drug use after the wedding reception. However, this statement was offered into evidence by the defense, without objection, well after the Government had rested its case. We note that, according to counsel, appellant's wife would assert the marital privilege. Perhaps the prosecution could have attempted to pursue this matter by proferring her statement as that of an unavailable declarant; however, they failed to do so at trial. Other witnesses, including some civilians who were said to be at the scene of cocaine use, were neither shown to be unavailable nor unresponsive to a subpoena or invitational travel orders. *See generally United States v. Curro*, 847 F.2d 325, 328 (6th Cir.1988) (if Government has two equally good sources, it should not rely on the absent witness). Finally, there are tantalizing comments in the record of trial which suggest that the Government may have had still another confidential source of information who could have supplied corroboration. If there was indeed such a confidential informant, he or she appears to have insisted on anonymity.

Based upon this posture of the case, we find Foley's statement to be inadmissible under the residual exception of Rule 804(b)(5). *See generally United States v. Love*, 592 F.2d 1022 (8th Cir.1979) and Annot., 61 A.L.R.Fed. 915, 921 (1983). Accordingly, we are convinced that the military judge erred in admitting the statements of Foley into evidence against the appellant. *See Boyce* 849 F.2d at 837 and *United States v. Palumbo*, 639 F.2d 123, 128 (3d Cir.1981).

We have considered the emerging law of interlocking confessions (*United States v. Dill*, 24 M.J. 386, 388 n. 5 (C.M.A.1987)), and find it unhelpful in this context. We will leave for another day an analysis of the limits of this concept in military practice. We note that Supreme Court decisions addressing this matter speak only of co-defendants. *See Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) and *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). In the specific case before us, even if we view the interlocking confession concept as extending beyond co-defendants to co-actors, we would nonetheless find Foley's statement inadmissible under Rule 804(b)(3). Simply stated, it was not against his interest when made. *See United States v. Koistinen*, 27 M.J. 279, 281 (majority opinion) and 293 (Everett, C.J., concurring) (C.M.A.1988). *See also United States v. Belfield*, 24 M.J. 619, 620 (A.C.M.R.1987), *pet. denied* 25 M.J. 251 (C.M.A.1987). Similarly, we find the interlocking confession rationale inapposite under Rule 804(b)(5). This is so because the Government failed to show Foley's statement was more probative than any other available evidence. Thus, the prosecution failed to meet the standard required for admission as residual

hearsay. *See United States v. Hines,* 23 M.J. 125 (C.M.A.1986) and cases cited.

The statements of Foley were the sole corroboration to the appellant's confession offered at trial. Therefore, since it is elemental law that an accused cannot be convicted on his confession alone, the findings of guilty and the sentence are set aside. Because of this conclusion, the remaining asserted errors need not be addressed. A rehearing may be ordered by the same or a different convening authority.

Senior Judge LEWIS and Judge BLOMMERS concur.